# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SANDRA CALDWELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 24-0161-WS-M** |
| | ) |
| **KIMBERLY-CLARK USA, LLC, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on motions to dismiss filed by the entity defendant ("KC") and by two individual defendants ("Murphy" and "Helms").  (Docs. 19, 30).  The plaintiff has filed responses, (Docs. 22, 33), and the movants replies, (Docs. 25, 34),[1] and the motions are ripe for resolution.  After careful consideration, the Court concludes that both motions are due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 14), the plaintiff is employed by KC as a material supply specialist.  Helms is a white male and the plaintiff's immediate supervisor.  Murphy is a white female who works for KC in Human Resources.  Two other individual defendants ("Kerstetter" and "Judd") have not appeared.  The amended complaint lists the following eleven "claims for relief," with the defendants identified by parenthetical:

- First Claim (KC and Helms):  Race and sex discrimination in promotion, discipline, and hostile work environment, and retaliation, in violation of Title VII and Section 1981;

---

[1] The plaintiff's motions to strike the movants' filings for violating the font requirements of General Local Rule 5(a)(2), (Doc. 22 at 18; Doc. 33 at 16), are **denied**.  The movants' filings do not violate the rule.

- Second Claim (KC and Helms):  An essentially verbatim repetition of the First Claim, but without a request for punitive damages;

- Third Claim (all defendants):  An essentially verbatim repetition of the Second Claim;

- Fourth Claim (KC and Helms): Racially discriminatory harassment and demotion, in violation of Sections 1981 and 1983;

- Fifth Claim (all defendants):  Retaliation, in violation of Sections 1981 and 1983;

- Sixth Claim (all defendants):  Hostile work environment, in violation of Section 1981;

- Seventh Claim (all defendants except Kerstetter):  Deprivation of due process, brought under Section 1983;

- Eighth Claim (all defendants):  First Amendment retaliation, brought under Section 1983;

- Ninth Claim (KC):  Breach of contract;

- Tenth Claim (individual defendants):  Intentional infliction of emotional distress;

- Eleventh Claim (KC):  Violation of the Equal Pay Act.

(Doc. 14 at 16-29).  The movants seek dismissal, pursuant to Rule 12(b)(6), of all claims asserted against them.  (Doc. 19 at 3; Doc. 30 at 3).[2]

## DISCUSSION

Rule 12(b)(6) allows a motion to dismiss for "failure to state a claim upon which relief can be granted."  Such challenges are of two basic stripes.  The first is a failure of the complaint to satisfy Rule 8(a) by alleging "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The second is a procedural or substantive legal impediment to recovery such that, "on the basis of a dispositive issue of law, no construction of the factual allegations will support

---

[2] For specific arguments, the movants also invoke Rules 12(b)(5) and 12(e).

the cause of action." *D.P. ex rel. E.P. v. School Board*, 483 F.3d 725, 728-29 (11th Cir. 2007) (internal quotes omitted).  The movants advance challenges of both kinds.

Because they are the parties seeking relief, the movants "bear at least the initial burden of demonstrating that [they are] entitled to dismissal under Rule 12(b)(6)." *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1239 (S.D. Ala. 2013); *accord Smith v. Seaport Marine, Inc*., 919 F. Supp. 2d 1267, 1275 n.9 (S.D. Ala. 2013). This includes the burden of identifying specific reasons that specific portions of the amended complaint are subject to dismissal and of presenting adequate support for their position.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).  "The Court applies the same rule to motions to dismiss and accordingly limits its review to those arguments the parties have expressly advanced." *Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023).  Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005).

As the Court has often ruled, it and other courts "ordinarily do not consider arguments raised for the first time on reply," and will not do so as to any non-jurisdictional argument unless "the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it." *Parker*, 653 F. Supp. 3d at 1108.

## I.  Service of Process.

Murphy seeks dismissal under Rule 12(b)(5) for insufficient service of process. (Doc. 30 at 3-4).

Rule 4(a)(1)(B) requires that a summons "be directed to the defendant."  The summons was directed to:

SARAH MURPHY
HUMAN RESOURCES
KIMBERLY-CLARK USA, LLC
CT Corporation – Registered Agent

(Doc. 18 at 1).  Without discussion, Murphy declares that this designation fails to comply with Rule 4(a)(1)(B).  (Doc. 30 at 4).  The Court cannot agree.  The defendant's name is Sarah Murphy, and the summons is directed to Sarah Murphy.  The remaining lines simply identify her employment, her employer, and an agent for service of process.

The plaintiff attempted service on Murphy pursuant to Rule 4(c)(1), which allows for service by "following state law."  Alabama law, unlike federal law, permits service by certified mail.  Ala. R. Civ. P. 4(i)(2).  Such service is effective upon "delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt."  *Id*. Rule 4(i)(2)(C).  The return of service indicates that process was mailed to CT Corporation and signed for by an unidentified individual other than Murphy.  (Doc. 21 at 1).  Murphy believes it is plain that CT Corporation is KC's registered agent and not hers, and she defies the plaintiff to present evidence otherwise.  (Doc. 30 at 4).

Murphy has cited no authority for the proposition that the plaintiff must demonstrate that CT Corporation is her agent for receiving service of process before Murphy presents evidence that it is not.  Nor has Murphy accounted for the provision of Alabama law that the authority of an agent to receive mail and deliver it to the addressee "shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint."  Ala. R. Civ. P. 4(i)(2)(C).

Assuming nevertheless for purposes of argument that service on Murphy was ineffective, dismissal on this ground is presently unavailable.  Murphy was added as a defendant by the amended complaint, which was filed on July 9, 2024.  The 90-day period provided by Rule 4(m) for service of process began to run on that date.[3]  Ninety

---

[3] "[W]hen an amended complaint names a new defendant, a plaintiff has 120 days [now 90 days] from the date on which the amended complaint is filed to serve that defendant with process."  *Lindley v. City of Birmingham*, 452 Fed. Appx. 878, 880 (11th Cir. 2011) (citing cases

days after July 9, 2024 is October 7, 2024.   Rule 4(m) "prohibits dismissal for failure to serve process if fewer than [90] days have elapsed since the plaintiff filed [her] complaint."  *Betty K Agencies, Ltd. V. M/V Monada*, 432 F.3d 1333, 1342 n.5 (11th Cir. 2005).[4]

In summary, Murphy is not entitled to dismissal pursuant to Rule 12(b)(5).


## II.  Title VII Claims:  Individual Capacity.

Murphy and Helms are sued only in their individual capacity.  (Doc. 14 at 3-4). They argue that they cannot be so sued under Title VII, because they are not the plaintiff's employer.  (Doc. 30 at 12-13).  The plaintiff offers no response.

"[W]e now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company."  *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis omitted). This is true even when the individual is the president and sole shareholder of the corporate employer.  *Id*. at 932, 934.  Thus, for example, the defendant's CEO was properly granted summary judgment on a Title VII claim that he fired the plaintiff in retaliation for her complaints of discrimination, since he was not the plaintiff's employer.

---

from the First, Eighth, Ninth, and Tenth Circuits); *accord* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 & n.39 (4th ed. June 2024).

[4] The plaintiff does not defend the validity of service.  Instead, she assures the Court that she has been "diligently researching" Murphy's address and intends to seek an alias summons. (Doc. 33 at 7-8).  Murphy for her part expresses a willingness to waive service if properly requested.  (Doc. 34 at 2).  The plaintiff seeks an extension of time pursuant to Rule 4(m) but, as noted in text, she is still operating within the 90-day service period that rule provides.  Like Murphy's motion to dismiss, the plaintiff's request for additional time is premature. Nevertheless, it would be imprudent of the plaintiff not to pursue service or waiver before October 7, 2024:  Rule 4(m) requires an extension of time only "if the plaintiff shows good cause," which exists "only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service."  *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991).

*Martin v. Financial Asset Management Systems, Inc.*, 959 F.3d 1048, 1050, 1051 & n.2 (11th Cir. 2020).

In summary, Murphy and Helms are entitled to dismissal of the Title VII aspect of the First, Second, and Third Claims as to them.

## III.  Title VII Claims:  Timeliness.

A plaintiff is required to bring suit under Title VII within 90 days after the EEOC "notif[ies]" the plaintiff that her charge has been dismissed.  42 U.S.C. § 2000e-5(f)(1). The right-to-sue letter in this case is dated February 21, 2024.  (Doc. 14 at 4; Doc. 16-1). This action was filed on May 22, 2024, some 91 days later.  (Doc. 1).  KC argues that the plaintiff has "failed to meet her burden of establishing that her action is timely."  (Doc. 19 at 5).

As KC acknowledges, (Doc. 19 at 4), the 90-day period in which to file suit runs from the plaintiff's *receipt* of the notice, not from its issuance.  *E.g., Stamper v. Duval County School Board*, 863 F.3d 1336, 1340 (11th Cir. 2017) ("When the employee receives a notice of dismissal from the Commission, she has 90 days to file a civil action against the employer.").  KC nevertheless argues, without explanation or citation to relevant authority, that the Title VII claims are due to be dismissed with prejudice because the amended complaint "offer[s] no explanation or other facts related to the timeliness of her lawsuit."  (Doc. 19 at 5).

KC apparently assumes the existence of a presumption of instantaneous receipt of a right-to-sue letter, such that the filing of suit 91 days after issuance mandates dismissal absent adequate explanation in the complaint.  There is no such presumption.  On the contrary, "a plaintiff is presumed to have received a right to sue letter three days after it was mailed."  *Ramion v. Brad Cole Construction Co.*, 805 Fed. Appx. 948, 949 (11th Cir. 2020) (describing *Kerr v. McDonald's Corp.*, 427 F.3d 947 (11th Cir. 2005)); *accord Owens-Benniefield v. BSI Financial Services*, 806 Fed. Appx. 853, 857 (11th Cir. 2020) ("We have applied a presumption of three days for receipt by mail when the date of receipt is in dispute in the context of Title VII cases where a plaintiff must file a suit

within 90 days of receiving an Equal Employment Opportunity Commission's right-to-sue letter.") (describing *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999)).

The existence of this presumption means that a plaintiff filing suit 91 days after issuance of a right-to-sue letter need not plead additional facts in order to avoid a limitations defense.  Unless the complaint includes other allegations suggesting receipt on the date of issuance (and KC asserts none), the plaintiff's Title VII claims cannot be dismissed as untimely on the face of the complaint.

In summary, KC is not entitled to dismissal of the Title VII aspect of the First, Second, and Third Claims on the grounds of untimely suit.

## IV. Title VII Claims:  Scope of the Charge.

KC argues that the First, Second, and Third  Claims should be dismissed in their entirety because the amended complaint's allegations of harassment are "outside the scope of her Charge."  (Doc. 19 at 11).[5]  Although KC seeks dismissal of these claims *in toto*, the requirement of exhaustion of administrative remedies applies only to their Title VII aspect.  In addition, KC addresses only harassment, not the other wrongs alleged in these claims.  Therefore, only the hostile work environment and retaliation claims as pursued under Title VII are placed in issue by KC's argument.

The plaintiff's charge asserted that she was "underpaid in [her] job compared to my white male coworkers who are paid more than me."  It then addressed at length a denial of promotion by Helms and others in March 2023.  The charge concludes as follows:

> In addition to my race and gender being motivating factors behind these
> adverse employment actions, Respondent has also retaliated against me

---

[5] "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," that is, if "the authenticity of the document is not challenged."  *Day v. Taylor*, 400 F.3d 1271, 1276 (11th Cir. 2005).  KC invites the Court to consider the charge under this principle, (Doc. 19 at 2 n.2), and the plaintiff offers no objection.

for complaining of race and gender discrimination in 2023.  My supervisor, Helms, is constantly picking at me and trying to discipline me.  In summary, I have been discriminated against because of my race and female gender in wages and selection decisions and retaliated against for complaining of discrimination.

(Doc. 19-1).  The charge identifies the earliest date of discrimination as March 2023 and states it is "continuing action" through the June 29, 2023 date of the charge.  (*Id.*).

KC complains that, while the harassment identified in the charge is described only generally as "constantly picking at me and trying to discipline me," the amended complaint identifies specific harassing incidents, occurring (a) before the charge was filed (a reprimand by Helms in May 2023), (b) after the right-to-sue letter issued (harassing behavior by Murphy, Kerstetter, and Judd in April 2024 and a suspension by Helms in May 2024), and (c) after this action was filed (an uncomfortable encounter involving Helms in June 2024).  KC complains further that, while the charge identifies the earliest date of discrimination as March 2023, the amended complaint alleges that Helms' harassment began around December 2022.  (Doc. 19 at 11-12).

"[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Patterson v. Georgia Pacific, LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (internal quotes omitted).  KC acknowledges the governing standard but does not apply it, and it is not the Court's role to develop and support arguments on KC's behalf.  In any event, it is not clear that any portion of the amended complaint lies beyond the scope of a reasonable EEOC investigation into her charge.

The charge alleges that Helms was constantly trying to discipline the plaintiff.  A reasonable EEOC investigator would ask the plaintiff what she was referring to and would presumably be told of the May 2023 reprimand.  The amended complaint alleges that Helms' harassment began after the plaintiff lodged a formal grievance over pay.  A reasonable investigator would ask about the charge's assertion of pay discrimination and would presumably be told of the grievance and of Helms' response.  In both instances, the amended complaint is "like or related to, or gr[o]w[s] out of," and properly serves to

"amplify, clarify, or more clearly focus[,] the allegations in the EEOC complaint." *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotes omitted).

As for the April, May, and June 2024 incidents, and as the plaintiff notes, (Doc. 22 at 7-8), "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge ...." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (internal quotes omitted). KC "does not dispute this" but says the amended complaint does not allege that these incidents were retaliatory. (Doc. 25 at 3). The Court must disagree. *See infra* Part VII.J.

Finally, KC argues that, even if the 2024 incidents of harassment are immune from the exhaustion requirement to the extent presented as retaliation, they are not immune from the requirement to the extent presented as contributing to a discriminatorily hostile work environment. (Doc. 25 at 3). That is not an implausible distinction, but KC offers no authority demonstrating its legal existence. The sole case to which it cites says only that post-charge "[d]iscrete acts" of discrimination "that are offered as the essential basis for judicial review" must be the subject of their own charge. *Basel v. Secretary of Defense*, 507 Fed. Appx. 873, 876 (11th Cir. 2013). The only post-charge "discrete act" is the May 2024 suspension, *see* Part VII.D.1, *supra*, which KC does not challenge as the "essential basis" of a claim (such as for discriminatory discipline) but only as one of several incidents contributing to a hostile work environment.

In summary, KC is not entitled to dismissal of any portion of the Title VII aspect of the First, Second, and Third Claims on the grounds of failure to exhaust administrative remedies.

## V. Section 1981 Claims:  Sex.

The First, Second, and Third Claims include the claim that the defendants discriminated against, and retaliated against, the plaintiff based on her race and sex, in violation of Section 1981. (Doc. 14 at 16-19). The movants argue that Section 1981

addresses only race, not sex.  (Doc. 19 at 14; Doc. 30 at 10).  The plaintiff offers no response.

Section 1981 generally provides that all persons will have the same enumerated right "as [are] enjoyed by white citizens."  42 U.S.C. § 1981(a).  What the statute prohibits is "intentional race discrimination."  *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765, 775 (11th Cir. 2024) (internal quotes omitted).  Sex is not race, and it is thus beyond the scope of Section 1981.

In summary, the movants are entitled to dismissal of the Section 1981 aspect of the First, Second, and Third Claims to the extent based on sex rather than race.

## VI.  Section 1981 Claims:  Section 1983.

The Fourth and Fifth Claims assert violations of Section 1981 and Section 1983. (Doc. 14 at 20-21).  "While it is not a source of substantive rights, section 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes."  *Bannum, Inc., v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990). "To state a claim under section 1983, [a plaintiff] must allege that an act or omission, committed by a person acting under color of state law, deprived them of a right, privilege, or immunity secured by the Constitution or a federal statute."  *A.W. ex rel. J.W. v. Coweta County School District*, 110 F.4th 1309, 1315 (11th Cir. 2024).  The movants argue that the Fourth and Fifth Claims must be dismissed for failure to allege that they acted under color of state law.  (Doc. 19 at 15-16; Doc. 30 at 11).

Although the Fourth and Fifth Claims invoke Section 1983, the underlying right secured by federal law rests in Section 1981, and "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination …."  42 U.S.C. § 1981(c).  Pursuant to this language, "Section 1981 provides a cause of action for individuals subjected to discrimination by private actors …."  *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998).  Because Section 1981 itself provides the cause of action as

against private actors, the plaintiff need not satisfy Section 1983 in order to pursue the Fourth and Fifth Claims.[6]

In summary, the movants are not entitled to dismissal of the Fourth and Fifth Claims for failure to plead that they acted under color of state law.

## VII. Pleading Deficiencies.

To survive dismissal under Rule 12(b)(6), a complaint must satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" satisfy the rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level …." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual

---

[6] Only when the defendant is a state actor must a plaintiff invoke Section 1983 in order to pursue a claim under Section 1981. *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

"[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As this Court has held, "the plaintiffs need not support those [pleaded] facts with secondary facts, tertiary facts, ad infinitum in order to satisfy Rule 8(a)(2)." *Howard v. Bayrock Mortgage Corp*., 2010 WL 4628120 at *3 (S.D. Ala. 2010). This proposition flows naturally from the principle that the plaintiff "need not prove his case on the pleadings – h[er] Amended Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim, that" the defendants violated her asserted rights. *Speaker v. United States Department of Health and Human Services Centers for Disease Control and Prevention,* 623 F.3d 1371, 1386 (11th Cir. 2010).

A complaint that fails to plead enough facts to meet the plausibility standard is subject to dismissal under Rule 12(b)(6). But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, *and* makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard. "Vague, generalized assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp*., 2013 WL 1748796 at *2 (S.D.

Ala. 2013). Just as "the *Twombly* standard is not a trap for the unwary pleader who fails to utter talismanic incantations," *Caytrans BBC, LLC v. Equipment Rental and Contractors Corp.*, 2009 WL 857554 at *1 (S.D. Ala. 2009), neither is "*Twombly*" a talisman or thaumaturgical word, the invocation of which excuses a defendant from demonstrating why, in the context of a specific complaint, an allegation or cause of action lacks plausibility. *68V BTR Holdings, LLC v. City of Fairhope*, 2023 WL 1997791 at *3 (S.D. Ala. 2023).

The movants challenge almost every claim asserted by the plaintiff as infected with fatal pleading deficiencies under the standards identified above.[7] The Court considers these challenges in turn.

### A. Failure to Promote.

The First, Second, and Third Claims assert a claim for race and sex discrimination in failing to promote the plaintiff. (Doc. 14 at 16-20). The movants first object that the amended complaint does not allege that the failure to promote was based on the plaintiff's race and/or sex. (Doc. 19 at 10; Doc. 30 at 11). The amended complaint, however, explicitly alleges exactly that. (Doc. 14, ¶ 58).

The movants next argue that a conclusory allegation that an employment decision was based on race or sex in insufficient to satisfy Rule 8(a). (Doc. 19 at 10; Doc. 30 at 11-12). This is correct. The need for factual allegations to render a claim "plausible on its face" extends to the element of discriminatory motive. In *Iqbal*, an allegation that the defendants' treatment of the plaintiff was "solely on account of [his] religion, race, and/or national origin" was "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" and therefore "not entitled to be assumed true." 556 U.S. at 680-81 (internal quotes omitted). The Eleventh Circuit has routinely required

---

[7] The only exception is the Tenth Claim, which is addressed in Part VII.H for ease of flow.

plaintiffs to include sufficient factual allegations to make it plausible that a defendant's action was based on an unlawful motive.[8]

The movants have identified the correct standard, but they have not explained how the failure-to-promote claim fails to satisfy it. The amended complaint alleges: that the plaintiff has had consistently good performance throughout her 16 years with KC; that promotion within her department has historically been based on seniority; that she was the senior person in her department; that she had been promised the promotion by her supervisor (identified as Helms); that she had been trained for that position; and that the promotion was nevertheless given instead to a named white male with less experience and inferior qualifications. (Doc. 14, ¶¶ 19, 35, 40, 53-56). These factual allegations are at least as strong as those in the cited appellate cases in which an allegation of unlawful discriminatory motive was deemed plausible. Absent explanation, which the movants do

---

[8] *Compare McCarthy v. City of Cordele*, 111 F.4th 1141, 1143, 1146-47 (11th Cir. 2024) (discriminatory motive by a majority of commissioners was plausible where the complaint alleged, *inter alia*, that one commissioner campaigned for election on the platform of replacing white employees with blacks, that he told the plaintiff he would be replaced by a black woman, that all the commissioners who voted to terminate the plaintiff were black, that the vote occurred on the new commissioners' first day in office, that the outgoing commissioners had just renewed the plaintiff's contract a month earlier, and that the plaintiff was replaced with a black woman); *Ziyadat v. Diamondrock Hospitality Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (discriminatory motive was plausible where the complaint alleged that other guests of different ethnicity behaved similarly to the plaintiff but were not required to leave); *Smith v. CH2M Hill, Inc.*, 521 Fed. Appx. 773, 775 (11th Cir. 2013) (discriminatory motive was plausible where the complaint alleged, *inter alia*, that the plaintiff was replaced by a person of a different race and that persons not of his race were retained when he was discharged); *and McManus v. Amerijet International, Inc.*, 2024 WL 4003391 at *4 (11th Cir. 2024) (discriminatory motive was plausible where the complaint alleged, *inter alia*, that other managers outside of her protected classes shared the same responsibility for monitoring and mitigating overages but were not, like her, terminated for failure to control overages) *with Hamilton v. Fulton County Schools*, 2023 WL 6314097 at *4 (11th Cir. 2023) (discriminatory motive was not plausible where the complaint alleged only that the plaintiff was qualified for the position, which was filled by a friend of the supervisor) *and Farrukh v. University of South Florida Board of Trustees*, 2022 WL 3973703 at *3 (11th Cir. 2022) (discriminatory motive was not plausible where the complaint alleged generally that the defendant's employees treated the plaintiff less favorably than those of different national origin but offered no factual details about either his treatment or that of his comparators).

not provide, the Court cannot conclude that the amended complaint fails to plausibly allege that the plaintiff was denied promotion due to her race and/or sex.

As Murphy and Helms acknowledge, Section 1981 "provide[s] for individual liability." *Shotz v. City of Plantation*, 344 F.3d 1161, 1176 (11th Cir. 2003). They argue, however, that in order to state any Section 1981 claim against them, the plaintiff must allege that they were "linked" to the challenged conduct. (Doc. 30 at 14). The plaintiff does not respond.

Murphy and Helms rely on this Court's decision *in Page v. Winn-Dixie Montgomery, Inc*., 702 F. Supp. 2d 1334 (S.D. Ala. 2010). The Court noted that other federal courts "have held that a claim for individual liability under § 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." *Id*. at 1355. Because there was no triable issue as to whether a discriminatory action had occurred, *id*. at 1356, the Court in *Page* did not resolve what "link" is necessary. Murphy and Helms identify no test for "linkage," and the Court declines to discover or create one on their behalf.

Finally, the movants argue that the amended complaint admits that every employment decision of which the plaintiff complains (including failure to promote) was made on a non-discriminatory basis. (Doc. 19 at 10; Doc. 30 at 2). The portions of the amended complaint on which they rely merely quote KC policy; they do not allege that KC lived up to its policy of non-discrimination. (Doc. 14, ¶¶ 45-52).

In summary, the movants are not entitled to dismissal of the discriminatory failure-to-promote claim.

### B. Suspension.

The First, Second, and Third Claims assert a claim for race and sex discrimination in suspending the plaintiff without pay. (Doc. 14 at 16-20). The movants argue first that the amended complaint fails to allege that the plaintiff was suspended due to her race and/or sex. (Doc. 19 at 10; Doc. 30 at 11). The Court again must disagree, as the First,

Second, and Third Claims allege that the movants discriminated against the plaintiff by suspending her based on her race and sex.  (Doc. 14 at 16-20).

Better supported is the movants' argument that the amended complaint does not include factual allegations making a discriminatory motive for the suspension plausible. (Doc. 19 at 10; Doc. 30 at 11-12).  The amended complaint vaguely questions the legitimacy of the suspension, and it identifies the instigator as a white female (Murphy) and the decisionmaker as a white male (Helms), (Doc. 14, ¶¶ 22-33, 64-65), but it does not allege that persons outside the plaintiff's protected categories have engaged in similar conduct without consequence,[9] nor does it present any other factual indication that race or sex motivated either Murphy or Helms.  The plaintiff offers no relevant response.  (Doc. 22 at 11-12).

In summary, the movants are entitled to dismissal of the discriminatory suspension claim as to them.

### C. Demotion.

The heading of the Fourth Claim alleges a racially discriminatory "demotion and retraction of duties."  (Doc. 14 at 20).  KC argues that the amended complaint contains no allegations regarding a demotion or retraction of duties, (Doc. 19 at 10), while Helms argues that the amended complaint contains no factual allegations making it plausible that any demotion or retraction of duties was based on the plaintiff's race.  (Doc. 30 at 12). Although it seems possible that it hints at a loss of pay and/or level due to some grandfathering snafu, (Doc. 14, ¶¶ 59-62), the amended complaint plainly fails to

---

[9] "By its very nature, … discrimination is a comparative concept – it requires  an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'"  *Lewis v. City of Union City*, 918 F.3d 1213, 1223 (11th Cir. 2019) (en banc).  A valid comparator must be "similarly situated in all relevant respects."  *Id*. at 1226.  In the discipline context, a valid comparator ordinarily "will have engaged in the same basic conduct (or misconduct) as the plaintiff" and "will have been subject to the same employment policy, guideline, or rule as the plaintiff."  *Id*. at 1228.  The amended complaint identifies two white male comparators, but it does not allege that they committed similar infractions without penalty. (Doc. 14, ¶¶20-21).  Simply saying, as the amended complaint says, that the comparators have "not been discriminated against with [respect to] discipline," adds nothing.

articulate that a demotion actually occurred, and it contains no allegations rendering plausible the Fourth Claim's conclusory allegation that the plaintiff was demoted based on her race. The plaintiff offers no response.

In summary, KC and Helms are entitled to dismissal of the Section 1981 claim for discriminatory demotion and retraction of duties.

### D.  Hostile Work Environment.

The First, Second, Third, Fourth, and Sixth Claims all seek relief on the grounds that the plaintiff was subjected to a racially and/or sexually hostile work environment. (Doc. 14 at 16-23). The movants argue that the amended complaint fails to allege that the hostile work environment was based on race or sex. (Doc. 19 at 10; Doc. 30 at 12). The Court again finds such an allegation within the body of the claims. (Doc. 14, ¶¶ 68, 70, 76, 78, 84, 86, 95).

The movants next argue that the amended complaint does not contain factual allegations making plausible the assertion that the hostile work environment was motivated by race or sex discrimination. (Doc. 19 at 13-14; Doc. 30 at 8-10). The Court agrees. The amended complaint does not allege that racial or sexual language was used, does not allege that similarly situated whites or males were not subjected to a similar work environment,[10] and does not include any other allegations that could suggest a racial or sexual motivation. The plaintiff offers no response.

An essential element of a claim of a hostile work environment is that the harassment complained of be "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment." *Copeland v. Georgia Department of Corrections*, 97 F.4th 766, 774 (11th Cir. 2024) (internal quotes omitted). The movants argue that the harassment alleged in the amended complaint is insufficient as a matter of law to satisfy this element. (Doc. 19 at 13-14; Doc. 30 at 8-10). The plaintiff offers no relevant response. (Doc. 22 at 13-14; Doc. 33 at 10-12).

---

[10] The amended complaint identifies two white male comparators but does not address their work environment. (Doc. 14, ¶¶ 20, 21).

The amended complaint identifies the following as contributing to a hostile work environment:  (1) in or about January 2023, Helms began creating a hostile work environment, which continued up through the plaintiff's filing of a charge of discrimination in June 2023, (Doc. 14, ¶ 38); (2) in early 2023, a promotional opportunity was taken away from her, (*id*., ¶ 40); (3) in May 2023, Helms reprimanded the plaintiff for reporting out as a 'no call no show,' even though the plaintiff reported out correctly, (*id*., ¶ 42); (4) on April 23, 2024, Murphy harassed the plaintiff by yelling at her in front of co-workers, having a "nasty attitude," exhibiting a "harsh demeanor," being "rude and demanding," threatening to involve the plant manager, insisting that the plaintiff leave work for the day, saying she was "tired of this mess" and of being disrespected, talking over the plaintiff as she tried to explain the situation to others, telling the plaintiff she could not speak with a union representative, and bringing in the senior manufacturing lead, (*id*., ¶¶ 22-29); (5) the senior manufacturing lead (Kerstetter) told the plaintiff she needed to go home, accused her (apparently accurately) of recording their conversation, told her (inaccurately) that this is illegal, and threatened and harassed her, (*id*., ¶ 27); (6) two days later, Murphy requested a third party to be present at a meeting between the plaintiff and Murphy's supervisor (Judd) to discuss the events of April 23, (*id*., ¶ 32); (7) when the plaintiff told Judd what Murphy had done on April 23, Judd just asked the plaintiff if she liked her job, how long she had been employed, and what department she worked in, (*id*., ¶ 31); (8) in May 2024, Helms filed a notice of reprimand and suspended the plaintiff for three days without pay as a result of the April 23 incident, (*id*., ¶ 64); and (9) on June 4, 2024, Helms came to the plaintiff's work area and told her firmly that "you need to acknowledge me," even though Helms no longer worked in that area.  (*Id*., ¶ 66).

## 1.  Discrete acts.

A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult."  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotes omitted).  It is "composed of a series of separate acts that collectively constitute one 'unlawful employment practice' under Title VII, *id.* at 117,

and by its "very nature involves repeated conduct." *Id*. at 115. "Hostile environment claims are different in kind from discrete acts," *id*. at 115, because "[d]iscrete acts … [e]ach … constitute[e] a separate actionable 'unlawful employment practice.'" *Id*. at 114. "Discrete acts" include "termination, failure to promote, denial of transfer, or refusal to hire," and any other "adverse employment decision," *id*., that is, what are commonly called "adverse employment actions." A suspension without pay is an adverse employment action, *Davis v. Legal Services Alabama, Inc*., 19 F.4th 1261, 1266 (11th Cir. 2021), as is a failure to promote. *Bell v. Sheriff of Broward County*, 6 F.4th 1374, 1377 (11th Cir. 2021). The Eleventh Circuit has described the relationship between discrete acts and a hostile work environment claim in varying ways but, as discussed below, the Court concludes that established precedent does not allow the plaintiff to base her claim, in whole or in part, on her suspension or non-promotion.

The Eleventh Circuit in *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), after quoting from *Morgan* much of what appears above, ruled that some of the plaintiff's allegations "constitute discrete acts that *must* be challenged as separate statutory discrimination and retaliation claims" and that "*cannot* be brought under a hostile work environment claim." *Id*. at 1378 (emphasis added). The panel agreed with this Court's conclusion, based on *Morgan*, that "discrete discriminatory acts must be challenged as separate statutory violations and not lumped together under the rubric of hostile work environment." *McCann v. Mobile County Personnel Board*, 2006 WL 1867486 at *20 (S.D. Ala. 2006). Under *McCann*, the plaintiff is absolutely barred from arguing that her suspension and the failure to promote her contributed to a hostile work environment.

After this Court's ruling in *McCann*, but before the Eleventh Circuit's affirmance, a different panel decided *Chambless v. Louisiana-Pacific Corp*., 481 F.3d 1335 (11th Cir. 2007). The plaintiff in *Chambless* brought claims for failure to promote, hostile work environment, and retaliation. *Id*. at 1347. All the non-discrete acts contributing to a hostile work environment – sexual touching, jokes, pranks and propositions, ridicule over the plaintiff's pregnancy, social isolation, and enforcing different arrival and break rules – occurred outside the limitations period. *Id*. at 1347, 1349. The retaliation and failure to

promote, however, which the Court recognized as "[d]iscrete acts of harassment actionable as unlawful employment practices," were timely.  *Id*.  Relying on *Morgan*'s discussion of how to apply limitations rules to hostile work environment claims, the *Chambless* panel ruled that, "[w]here the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim," the timeliness of the discrete act could render timely the otherwise untimely non-discrete acts.  *Id*. at 1350.  "The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim."  *Id*.  The Court concluded they were not, because the "circumstances" did not "suggest" that the discrete acts of retaliation and failure to promote "were the same type of discriminatory intimidation, ridicule, and insult that characterized the untimely allegations."  *Id*. (internal quotes omitted).

If *Chambless* and *McCann* both represent holdings on the same issue, *Chambless* presumably would prevail under the prior-panel-precedent rule.[11]  A sister court has reconciled *McCann* and *Chambless* by limiting *Chambless* to the question of the timeliness of a hostile work environment claim.  *Dawkins v. Fulton County Government*, 2012 WL 12892184 at *3 (N.D. Ga. 2012).[12]  The Court agrees that *Chambless* addressed only timeliness but is not sure its impact extends no further.  The premise of *Chambless* is that a discrete act may be considered "part of the same" hostile work environment claim when sufficiently related, and it is unclear how it could be part of such a claim for the purpose of measuring timeliness but not part of the claim for the purpose of measuring the existence of a hostile work environment.

---

[11] "Under our prior panel precedent rule, we are bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting en banc."  *League of Women Voters Inc. v. Florida Secretary of State*, 66 F.4th 905, 943 (11th Cir. 2023) (internal quotes omitted).

[12] *Accord Good v. Omni Hotels Management Corp*., 2008 WL 11322930 at *15 n.21 (N.D. Ga. 2008); *but see Harris v. Atlanta Independent School System*, 2009 WL 10665027 at *29 n.32 (N.D. Ga. 2009) (retreating from *Good*).

Ultimately, the Court need not decide whether *McCann* or *Chambless* controls, because the plaintiff cannot satisfy either. *Chambless* requires that the discrete acts be "sufficiently related" to the plaintiff's hostile work environment claim, which requires "circumstances" suggesting that the discrete acts reflected discriminatory "intimidation, ridicule and insult." 481 F.3d at 1350. Nothing in the amended complaint suggests that the suspension of the plaintiff was so infused; it states only that Helms suspended her based on the April 23 incident. (Doc. 14, ¶ 64). The failure to promote is alleged in similarly neutral language. (*Id.*, ¶¶ 40, 53-56, 59). These discrete acts, as alleged, thus are not sufficiently related to the hostile work environment claim to be considered part of that claim under *Chambless*.

The Eleventh Circuit again addressed the interplay between a hostile work environment claim and discrete acts in *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012). Citing *McCann*, the *Gowski* panel stated that "[d]iscrete acts cannot alone form the *basis* of a hostile work environment claim." *Id.* at 1312 (emphasis in original). Citing *Chambless*, the panel then stated, "[b]ut the jury could *consider* discrete acts as part of a hostile work environment claim." *Id.* at 1313 (emphasis in original). The panel "concluded that the jury could consider discrete acts as part of the hostile work environment," (*id.* at 1314), and it ruled that both non-discrete acts and discrete acts "played a role in the intimidation and ridicule" that created the hostile work environment. *Id.* at 1313.

The Court respectfully suggests that *Gowski* misread *McCann*, which established a prophylactic rule that is not amenable to an "alone" exception. The single additional authority cited by *Gowski* for its "alone" qualifier said only that the defendant's "hiring decisions, light work assignments, and alleged retaliation constituted discrete acts, not acts that were part of a hostile work environment" (a claim that had been asserted but dismissed without appeal). *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 962 n.7, 970 (11th Cir. 2008). *Davis* could not by this language have signaled that discrete acts can comprise part of a hostile work environment claim; it comes much closer to saying the opposite.

Unlike *Chambless*, *Gowski* treated discrete acts as part of the hostile work environment for purposes of measuring its severity and pervasiveness. But like *Chambless*, it did so only after confirming that the discrete acts "played a role in the intimidation and ridicule," echoing *Chambless*'s "sufficiently related" standard. *Gowski* thus did not introduce a third, lax standard for considering discrete acts under a hostile work environment claim. Even had it done so, and even if the prior-panel-precedent rule would not preclude its effectiveness, *Gowski* involved a claim of *retaliatory* hostile work environment, where the severe-or-pervasive test does not apply to begin with. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020) (*Gowski* conflicts with *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), and was never good law). *Gowski*'s discussion of discrete acts thus cannot be more than *dicta*.

In summary, the plaintiff cannot rely on either her unpaid suspension or the denial of promotion as part of the hostile work environment.

### 2. Non-discrete acts.

The non-discrete acts on which the plaintiff relies consist of: an unearned reprimand from Helms in May 2023;[13] an unpleasant encounter with Murphy and Kerstetter in April 2024; Murphy being a busybody and Judd being disinterested in the plaintiff's situation, also in April 2024; and Helms insisting that the plaintiff acknowledge him in June 2024.

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component. [citation omitted] In

---

[13] The Court assumes for discussion that the reprimand is not a discrete act. *See Barneman v. International Longshoreman Association Local 1423*, 840 Fed. Appx. 468, 480 (11th Cir. 2021) (verbal reprimand was not an adverse employment action); *Medearis v. CVS Pharmacy, Inc.*, 646 Fed. Appx. 891, 898 (11th Cir. 2016) (written reprimand that was not part of the plaintiff's personnel file was not an adverse employment action); *see generally Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001) (a Title VII discrimination claim "rarely may be predicated merely on [an] employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment").

determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotes omitted). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotes omitted).

The plaintiff alleges no incident so serious as to singlehandedly alter the terms and conditions of her employment. The individual incidents, far from being severe, are remarkably mild: being given a reprimand; being told to acknowledge a person; being told to go home; being paid attention to; being ignored. The most serious allegation is a single instance of Murphy yelling at the plaintiff in front of other employees, conduct the Eleventh Circuit has ruled does not support an objectively severe work environment even when (unlike here) it is accompanied by mocking and is repeated at least four times in as many months. *Peters v. HealthSouth, Inc.*, 542 Fed. Appx. 782, 785, 788 (11th Cir. 2013).

The amended complaint does not allege that any of the incidents were physically threatening or humiliating, and the plaintiff offers no explanation how they reasonably could be so construed.[14] Nor does the amended complaint allege any actual interference with the plaintiff's work performance, and no reasonable employee would experience

---

[14] In *Gupta v. Florida Board of Regents*, 212 F.3d 571 (11th Cir. 2000), the two "most serious" incidents involved the harasser putting his hand on the plaintiff's thigh (partly on the inside of her thigh) and lifting the hem of her dress about four inches. *Id*. at 579, 585. "Each incident was only momentary, and neither was coupled with any verbal suggestions or advances." *Id*. at 585. In *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999) (*en banc*), the plaintiff complained that the harasser "rubbed his hip against [hers] while touching her shoulder and smiling." *Id*. at 1247. In both cases, the Eleventh Circuit ruled that the conduct was not threatening or humiliating. *Gupta*, 212 F.3d at 586; *Mendoza*, 195 F.3d at 1248-49. That being so, the conduct here cannot be considered as threatening or humiliating.

such an interference on such minimal provocation.[15]  As for frequency, four incidents in thirteen months (or, more generously, three in two months) ranks low on the frequency scale.[16]

"[W]e recognize that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."  *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (internal quotes omitted).  The amended complaint alleges only such ordinary tribulations.  The plaintiff herself recognizes that she "must plead more than isolated incidents of rude or disrespectful behavior," (Doc. 22 at 13), but that is indeed all she has pleaded.  Because all of the relevant factors point in the same direction, the conclusion is clear:  the amended complaint does not state a claim for a racially or sexually hostile work environment.

In summary, the movants are entitled to dismissal of the discriminatory hostile work environment claim as to them.


### E.  Retaliation.

The First, Second, Third and Fifth Claims assert claims for retaliation in violation of Title VII and/or Section 1981.  (Doc. 14 at 16-22).  KC asserts no argument addressing the retaliation claims, and Murphy and Helms assert only one:  that the amended complaint fails to allege that the plaintiff's protected activity was a complaint based

---

[15] Interference with job performance "involves both a subjective and objective inquiry." *Gupta*, 212 F.3d at 586.  That is, the plaintiff must subjectively have experienced interference with her job performance, and the conduct must be such that it "would … have interfered with a reasonable employee's performance of her job."  *Id*.

[16] *See Gupta*, 212 F.3d at 579, 584-85 (eight episodes of touching, partial exposure, staring and complimenting in six or seven months, plus repeated invitations to lunch during the same period, was not frequent); *cf. Johnson v. Booker T. Washington Broadcasting Service, Inc*., 234 F.3d 501, 509 (11th Cir. 2000) ("fifteen separate instances of harassment over the course of four months," or roughly one incident a week, is "not infrequent").

"specifically upon race," as required by Section 1981.[17]  (Doc. 30 at 12).[18]  The amended

complaint, however, expressly alleges that the defendants retaliated against the plaintiff

"for complaining of race and gender discrimination."  (Doc. 14, ¶ 58).  Murphy and

Helms do not acknowledge this allegation or explain how it is inadequate, leaving the

Court nothing to consider.

    In summary, the movants are not entitled to dismissal of any part of the retaliation

claims.


### F.  Constitutional Claims.

    The Seventh and Eighth Claims allege violations of the First and Fourteenth

Amendments and are brought pursuant to Section 1983.  (Doc. 14 at 23-25).  The

movants argue that these claims must be dismissed because the amended complaint does

not allege the necessary governmental nexus – "state action" for the substantive claims

and "color of state law" for the Section 1983 gateway.[19]  (Doc. 19 at 15-16; Doc. 30 at

10-11).

    The plaintiff's constitutional claims require the plaintiff to allege state action.

*Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) ("The First, Fifth and

Fourteenth Amendments do not apply to private parties unless those parties are engaged

---

[17]A Section 1981 plaintiff must show that "the unlawful employment practice complained of was racial discrimination."  *Bell v. City of Auburn*, 722 Fed. Appx. 898, 900 (11th Cir. 2018); *see also Little v. United Technologies*, 103 F.3d 956, 961 (11th Cir. 1997) ("Title VII's prohibition against retaliation … is not identical to the kind of discrimination proscribed by § 1981[, which] is concerned with *racial* discrimination ….") (emphasis in original).

[18] The movants' briefs addressing Rule 8 deficiencies do not mention retaliation or point out any particular deficiency in the pleading of such a claim.  (Doc. 19 at 5-7; Doc. 30 at 4-6). As noted, the Court does not identify pleading deficiencies on behalf of defendants that, like the movants, make only a generalized Rule 8 objection.  The movants' briefs addressing "causation" (*i.,e.*, unlawful motivation) expressly and repeatedly limit the argument to claims of "discriminat[ion]" based on "race or gender," (Doc. 19 at 9-10; Doc. 30 at 11-12), language that excludes any challenge to the retaliation claims.

[19] "While it is not a source of substantive rights, section 1983 provides a method for vindicating federal rights conferred by the Constitution …."  *Bannum*, 901 F.2d at 997.

in an activity deemed to be 'state action.'") (internal quotes omitted). "To state a claim under section 1983, [a plaintiff] must allege that an act or omission, committed by a person acting under color of state law, deprived them of a right, privilege, or immunity secured by the Constitution or a federal statute." *A.W.*, 110 F.4th at 1315. The amended complaint alleges neither that the movants were engaged in state action nor that they acted under color of state law. Therefore, the Seventh and Eighth Claims fail to state a claim on which relief can be granted. The plaintiff offers no relevant response. (Doc. 22 at 17-18; Doc. 33 at 15-16).

In summary, the movants are entitled to dismissal of the Seventh and Eighth Claims as to them.

### G. Breach of Contract.

The Ninth Claim alleges that the plaintiff entered a contract for employment with KC, which KC breached. (Doc. 14 at 25-26). KC argues that, to satisfy Rule 8, the amended complaint must identify the contract and the provision(s) allegedly breached and that the amended complaint does neither. (Doc. 19 at 7). The plaintiff offers no response.

Rule 8 requires the pleader to identify the contract and the provisions of which have been breached. *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358-59 (11th Cir. 2020) (a complaint that did "not alleg[e] any general or specific provision of any contract that [the defendant] might have breached" failed to satisfy *Twombly*). The amended complaint quotes liberally from what appears to be KC's EEO policy, (Doc. 14, ¶¶ 45-52), but without alleging that the policy constitutes a contract with the plaintiff. (*Id*. at 2). *See generally Abney v. Baptist Medical Centers*, 597 So. 2d 682, 683 (Ala. 1992) (discussing how provisions in an employee handbook may become binding promises).[20] Similarly, the amended complaint mentions, seemingly in passing, a

---

[20] The Fourth Claim references an "employment contract with" KC bestowing an "interfer[ed] with … right to a work environment free from racial discrimination," (Doc. 14, ¶ 93), but this allegation is not incorporated into the Ninth Claim. (*Id*., ¶ 112).

mysterious "contract book" that apparently had some relevance to her January pay grievance, (Doc. 14, ¶ 39), but without alleging that it constitutes an employment contract with the plaintiff.

In summary, KC is entitled to dismissal of the Ninth Claim.

## H.  Intentional Infliction of Emotional Distress.

The Tenth Claim alleges that the individual defendants engaged in extreme and outrageous conduct that intentionally inflicted emotional distress upon the plaintiff. (Doc. 14 at 26-27).  "The four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are:  (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe."  *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011) (internal quotes omitted); *accord Harris v. McDavid*, 553 So. 2d 567, 569 (Ala. 1989).

Murphy and Helms first argue that their alleged conduct, as a matter of law, does not invoke a fact pattern that can state such a claim.  (Doc. 30 at 13-14).  "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 630 (Ala. 2010) (internal quotes omitted).  "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances."  *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).  According to Murphy and Helms, (Doc. 30 at 13), "[t]he tort of outrage ... is so limited that this Court has recognized it in regard to only three kinds of conduct:  (1) wrongful conduct in the family-burial context [citation omitted]; (2) barbaric methods employed to coerce an insurance settlement [citation omitted]; and (3) egregious sexual harassment [citation omitted]."  *O'Rear v. B.H.*, 69 So. 3d 106, 118 (Ala. 2011) (internal quotes omitted).  This listing, however, "is not to say ... that the tort of outrage is viable in only

the three circumstances noted" above.  *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011) (noting that liability was upheld in *O'Rear* even though the facts fell within none of the three categories).  Therefore, to say "that the tort of outrage is limited to three situations is an incorrect statement of the law." *Wilson v. University of Alabama Health Services Foundation, P.C.*, 266 So. 3d 674, 677 (Ala. 2017).  The plaintiff's claim in *Wilson*, for example, was based on comments made by the medical defendants to the plaintiff regarding her mother's "condition and her impending death, and to the effect that she was wasting resources by being in the hospital instead of dying at home." *Id*. at 675.

Germane to this case, the Alabama Supreme Court has allowed an outrage claim to proceed when, "among other things, the employee alleged a pattern of harassment that lasted for several months and that the conduct was directed toward the illegal purpose of violating the employee's federally protected right to be free from discrimination based on sex." *Cunningham v. Dabbs*, 703 So. 2d 979, 983 (Ala. Civ. App. 1997) (describing *Rice v. United Insurance Co. of America*, 465 So. 2d 1100, 1102 (Ala. 1984)); *see also Lees v. Sea Breeze Health Care Center, Inc*., 391 F. Supp. 2d 1103, 1108 (S.D. Ala. 2005) (considering how violation of public policy affects the assessment of conduct as extreme and outrageous).  Murphy and Helms, who have offered only glittering generalities, have not addressed such cases or the fact that "no precise formula can establish what conduct will be deemed beyond all possible bounds of decency, atrocious, and utterly intolerable in a civilized society" under Alabama law.  *Cunningham*, 703 So. 2d at 983 (internal quotes omitted).

Murphy and Helms also argue that the severe emotional distress the tort redresses "could never have been caused by" the conduct of which the plaintiff complains.  (Doc. 30 at 14).  No authority, legal principle, or line of reasoning is offered in support of this *ipse dixit*, leaving nothing for judicial consideration.

In summary, Murphy and Helms are not entitled to dismissal of the Tenth Claim.

## I. **Equal Pay Act.**

The Eleventh Claim alleges that KC violated the Equal Pay Act.  (Doc. 14 at 27-29).  In a single line of argument, KC asserts that this claim is conclusory and inadequate under Rule 8.  (Doc. 19 at 14-15).  As noted, such bland assertions – themselves conclusory – "plac[e] no burden on the Court to supply the deficiency or on the plaintiff to respond."  *FNB Bank*, 2013 WL 1748796 at *2.  The Court notes also that the argument is based on the false premise that the body of the Eleventh Claim contains all of the amended complaint's allegations regarding that claim, even though the Eleventh Claim incorporates by reference the factual allegations of the pleading, a number of which explicitly address pay issues.

KC's only other argument is that the Eleventh Claim alleges that KC has paid the plaintiff less than it pays "to its female employees."  (Doc. 14, ¶ 124; Doc. 19 at 15).  It is true, as KC says, that the Equal Pay Act addresses only wage discrimination on the basis of sex, and it is true that the plaintiff is female.  But KC offers no authority for the proposition that a claim should be dismissed based on such an obvious typographical error,[21] and sister courts have rejected similar efforts, frowning on the "sharp," even "frivolous," nature of such tactics.[22]  Absent contrary authority, which KC does not provide, the Court will follow their lead.

In summary, KC is not entitled to dismissal of the Eleventh Claim.

---

[21] The  EEOC charge, which KC insists the Court consider, states that the plaintiff was underpaid "compared to my white male coworkers."  (Doc. 19-1).

[22] *Vargas v. Snowflake Unified School District No. 5*, 2017 WL 2653056 at *2 (D. Ariz. 2017); *Hanson v. Berthel Fisher & Co. Financial Services, Inc*., 2014 WL 2434000 at *27 n.20 (N.D. Iowa 2014); *O'Connor & O'Connor, LLC v. Liberty Mutual Insurance Co*., 2013 WL 5519868 at *3 (M.D. Fla. 2013).

**J. Shotgun Pleading.**

Shotgun pleadings come in four recognized flavors.  "The most common type – by a long shot – is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).  The second type is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id*. at 1322.  Third is a complaint "not separating into a different count each cause of action or claim for relief."  *Id*. at 1323. Finally, there is the complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Id*.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds on which each claim rests."  *Id*.  The movants argue that the amended complaint is a shotgun pleading under each of these tests and ask that the Court either dismiss the amended complaint on this ground under Rule 12(b)(6) or strike it and require interpleader under Rule 12(e). (Doc. 19 at 7-9; Doc. 30 at 6-8).

The amended complaint is indeed poorly designed, but it is not so bad as the movants make out, especially after the rulings the Court has made above.  Regarding the third form of shotgun pleading, the movants complain that the First through Fifth Claims "cit[e] multiple statutes in the heading," but this cannot possibly lead to confusion.  For the first three claims, the two statutes are Title VII and Section 1981, which address the same wrongs and are subject to essentially the same standards.[23]  For the Fourth and Fifth Claims, the two statutes are Sections 1981 and 1983 and, as discussed in Part VI, the Section 1983 language is surplusage.

---

[23] *Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework").

The movants also complain that most of the amended complaint's claims are "direct[ed] … toward multiple defendants." There is nothing improper or confusing about such a common if not universal practice. The fourth form of shotgun pleading is implicated only when the pleading fails to specify "which of the defendants the claim is brought against," *Weiland*, 792 F.3d at 1393, and the amended complaint does precisely that as to each of its claims.

The movants' main objection is that each claim incorporates by reference all 52 paragraphs of the "statement of facts," which contain irrelevancies and conclusory assertions, without identifying which allegations are relevant to which count and which defendant.[24] Once again, the movants offer no explanation or even example but instead ask the Court to do the heavy lifting. The Court grudgingly does so, but only because the Eleventh Circuit has advised that, "[w]hen faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006).

For starters, the amended complaint does not implicate the first form of shotgun pleading. Each of the plaintiff's claims incorporate the 66 paragraphs preceding the First Claim, but none of them incorporate by reference the allegations of the preceding claims. As the *Weiland* Court specifically ruled, the first form of shotgun pleading is not in issue

_____

[24] KC says the number is 66, but that figure includes jurisdictional allegations, venue allegations, exhaustion allegations, and identification of the parties, (Doc. 14 at 2-4), none of which are challenged as confusing or otherwise objectionable.

Most of the remaining allegations preceding the First Claim, though challenged as being otherwise, are of similarly pellucid significance, including without limitation: paragraphs 15-18, 35, 53 (the plaintiff's protected characteristics and employment history); paragraphs 19, 22, 34 (the individual defendants' place in KC's hierarchy); paragraphs 20-21 (plaintiff's comparators); paragraphs 22-33, 64 (describing the April 2024 incident and subsequent suspension); paragraphs 40, 54-57 (describing the failure to promote); paragraphs 42-44 (the May 2023 reprimand and the internal complaint it prompted); and paragraphs 45-52 (excerpts from a KC policy).

when "[t]he allegations of each count are not rolled into every successive count on down the line."  792 F.3d at 1324.[25]

Before considering the remainder of the movants' argument, the Court takes inventory of the dismissed and remaining claims.  The Court's rulings in this opinion result in the complete dismissal of the Fourth, Sixth, Seventh, Eighth, and Ninth Claims as to the movants.  These rulings obviate consideration of the movants' general challenge as applicable to those claims.

The Eleventh Claim is a discrete claim against KC for violation of the Equal Pay Act and, as noted in Part VII.I, the factual allegations regarding the compensation and work of the plaintiff and other employees are plainly set forth and easily identifiable.

The Tenth Claim is a claim for the tort of outrage asserted against the individual defendants.  As it says, it is based on "[t]he conduct set out in this Complaint committed by the Defendant."  (Doc. 14, ¶ 119).  Murphy and Helms are aware of what conduct by them is alleged in the amended complaint (and thus made the subject of the Tenth Claim), since they themselves identify it.  (Doc. 30 at 2, 9).  By way of recap, the amended complaint alleges that Murphy harassed the plaintiff on April 23 and 25, 2024, by means described in detail.  (Doc. 14 at 1-2 & ¶¶ 22-29, 32).  The amended complaint alleges that Helms:  promised the plaintiff a promotion to Storekeeper and had her trained for the position in 2022 but gave the job to a less qualified white male in March 2023;[26] reprimanded the plaintiff in May 2023 for a non-existent 'no call no show'; reprimanded and suspended the plaintiff in May 2024 in connection with the April 2024 incident; and approached the plaintiff in June 2024 with an odd comment about her needing to acknowledge him.  (*Id.*, ¶¶  38-39, 42, 54-56, 64, 661).

---

[25] For their contrary proposition, the movants ignore *Weiland* and rely instead on *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  (Doc. 25 at 5; Doc. 34 at 3).  The *Weiland* Court, however, explained that *Magluta* involved a complaint that "incorporate[ed] the allegations of any count or counts that preceded it."  792 F.3d at 1324 (internal quotes omitted).

[26] According to the plaintiff's EEOC charge, which KC insists the Court consider, Helms interviewed the plaintiff for the position in March 2023.  (Doc. 19-1).

The Fifth Claim is for retaliation in violation of Section 1981.  As discussed in Part VII.E, the protected activity to support such a claim must be opposition to race discrimination, and the amended complaint alleges such opposition.  (Doc. 14, ¶ 58).  The retaliatory conduct is of course the conduct described in the preceding paragraph (as well as the conduct of Kerstetter and Judd), and the claim as against KC of course encompasses all the conduct of the individual defendants.

KC suggests the amended complaint does not characterize all these actions as retaliatory, (Doc. 25 at 4), but plainly it does:

- Failure to promote       Helms' harassment began shortly after the plaintiff complained about Helms and pay disparities, (Doc. 14, ¶¶ 38-41, 44), an allegation repeated in the Fifth Claim, (*id*., ¶ 98);

- Reprimand       the May 2023 reprimand was part of the same pattern, (*id*., ¶¶ 42-44), and the plaintiff's write-ups were retaliatory, (*id*., ¶ 99);

- April 2024 incident       Murphy subjected the plaintiff to reprisal during this incident due to her EEOC charge, (*id*. at 1-2); Murphy and Kerstetter retaliated against the plaintiff by their April 2024 conduct, (*id*., ¶¶ 100-01); Judd knew of the plaintiff's pending EEOC charge when he met with the plaintiff, (*id*., ¶¶ 31-32);

- Suspension       the plaintiff's write-ups were retaliatory, (*id*., ¶ 99);

- June 2024 incident       the defendants retaliated after the plaintiff's 2024 judicial complaint, (*id*., ¶ 58), and this incident occurred two weeks after it was filed; the Fifth Claim lists this incident as a basis of the retaliation claim, (*id*., ¶ 98).

The remaining portions of the First, Second, and Third Claims are for retaliation and for race and/or sex discrimination in promotion.  As discussed in Part VII.A, the

allegations regarding failure to promote are all in place, and the movants cannot be confused about them.  The retaliation claim echoes that raised in the Fifth Claim and is adequately addressed above.

Some of the amended complaint's allegations are perhaps of obscure import, some are perhaps expressed as legal conclusions, and the document as a whole falls far short of the ideal.  A shotgun pleading, however, is objectionable only insofar as it "fail[s] … to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland*, 792 F.2d at 1323.  "A dismissal … is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."  *Id*. at 1325 (internal quotes omitted, emphasis in original) (finding that standard unsatisfied).  The movants insist the amended complaint is so "confusing" that it is "virtually impossible" for them to respond to each claim, (Doc. 19 at 9; Doc. 30 at 8), but the discussion above refute s their contention.  The movants invoke Rule 12(e), but that provision similarly requires a pleading "so vague or ambiguous that the party cannot reasonably prepare a response," which is patently non-descriptive of the amended complaint.

In summary, the movants are not entitled to dismissal of the amended complaint as a shotgun pleading.

## VIII.  Leave to Amend.

The plaintiff requests leave to amend to correct any pleading deficiencies.  (Doc. 22 at 18; Doc. 33 at 16).  The movants request that dismissal be with prejudice because the plaintiff "cannot rectify the deficiencies that plague her Amended Complaint."  (Doc. 25 at 1; Doc. 34 at 1).

The movants' argument conflates two related but separate concepts:  dismissal with prejudice and dismissal without leave to amend.  The former does not depend on the latter but on the grounds of the dismissal.  A dismissal on the merits is a dismissal with prejudice, and a dismissal under Rule 12(b)(6) for failure to state a claim is a dismissal on the merits.  *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1299 (11th Cir. 2021)

34

(internal quotes omitted).  Every dismissal accomplished by this order is under Rule 12(b)(6) and so is both on the merits and with prejudice.

Just as whether a dismissal is with prejudice does not depend on whether the dismissal is with leave to amend, whether a dismissal is with leave to amend does not depend on whether the dismissal is with prejudice.  The Court recently addressed this in *Carla G. Mattson and James E. Mattson Trust v. Farudi*, 2024 WL 4122495 (S.D. Ala. 2024).  Claims dismissed with prejudice for incurable reasons (such as the non-existence of the pleaded cause of action) need not be with leave to amend.  *Id*. at *7.  Claims dismissed with prejudice for potentially curable reasons (such as pleading deficiencies under Rules 8(a) and 9(b)) are generally susceptible to amendment.  *Id*. at *8.  This "presumptive opportunity to amend" may be cut off, for example, when a represented plaintiff suffers a final judgment without having properly sought leave to amend, *id*., but the Court is not entering final judgment, since claims remain against each of the movants, as well as against the other defendants.

Of the claims and portions of claims dismissed by this order, the following are for incurable reasons and therefore may not be the subject of a second amended complaint: (1) the Title VII claims against Murphy and Helms in their individual capacity; and (2) the Section 1981 claims to the extent based on sex discrimination.  The following claims and portions of claims dismissed by this order are for potentially curable reasons[27] and therefore may be the subject of a second amended complaint:  (1) discriminatory suspension; (2) discriminatory demotion; (3) discriminatory hostile work environment; (4) free speech; (5) due process; and (6) breach of contract.

The plaintiff is **granted** leave to file, on or before **October 10, 2024**, a second amended complaint responsive to this order,[28] after which such leave must be sought by

---

[27] While successful cure seems unlikely – even remote – for some of these claims, the Court rejects the movants' unexplained *ipse dixit* that cure is impossible.

[28] "The Court does not recognize partial pleadings."  *Walker v. Love's Travel Center*, 2017 WL 4931693 at *4 n.9 (S.D. Ala. 2017).  That is, a plaintiff may not file an "amendment

motion or mutual consent under Rule 15(a)(2).  The plaintiff shall endeavor by any such pleading to streamline, organize, and clarify her factual allegations and her statement of her claims.  Leave is granted only for the purposes set forth in the preceding paragraphs; no new claims or parties may be added except on motion.  *Farudi*, 2024 WL 4122495 at *9.  The plaintiff is advised to take full advantage of this opportunity, as she is not guaranteed another.

## CONCLUSION

This case does not appear to be as complex as the parties have made it.  The plaintiff has filed an unnecessarily cumbersome pleading, and the movants have gotten lost in the weeds.  Neither side seems fully conversant with the governing law, and both sides seem content to offer broad generalities and let the Court supply and apply the details.  The Court recognizes that counsel on both sides are new to this District, but they will be held to its standards nonetheless.

For the reasons set forth above, the movants' motions to dismiss are **granted** with respect to:  (1) the Title VII claims against Murphy and Helms asserted in the First, Second, and Third Claims; (2) the Section 1981 claims asserted against the movants in the First, Second, and Third Claims, to the extent based on anything other than race discrimination or retaliation for complaining of race discrimination; (3) the claims asserted against the movants in the First, Second, and Third Claims for discriminatory suspension; (4) the claims asserted against the movants in the First through Fourth and Sixth Claims for discriminatory hostile work environment; (5) the claim asserted in the Fourth Claim for discriminatory demotion; (6) the claim asserted against the movants in the Seventh Claim; (7) the claim asserted against the movants in the Eighth Claim; and (8) the entirety of the Ninth Claim.  These claims, to the extent asserted against the

---

to" the complaint but only an entire "amended complaint."  Civil Local Rule 15(a) ("Any amendment to a pleading … must reproduce the entire pleading as amended and may not incorporate any prior pleading by reference.").

movants, are **dismissed with prejudice**, subject to the right of the plaintiff to amend as set forth in this order.  In all other respects, the movants' motions to dismiss are **denied**.

DONE and ORDERED this 19th day of September, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE