**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SANDRA CALDWELL,                      *
                                      *
        Plaintiff,                    *
                                      *
vs.                                   *   CIVIL ACTION NO. 24-00161-WS-B
                                      *
KIMBERLY-CLARK USA, LLC,              *
*et al.*,                             *
                                      *
        Defendants.                   *

<u>ORDER</u>

This action is before the Court on Plaintiff's motion for protective order (Doc. 83) and supplement to motion for protective order (Doc. 88); Defendants' motion for discovery sanctions (Doc. 86); Plaintiff's motion for discovery sanctions (Doc. 87); and Defendants' motion to continue deadline for dispositive motions (Doc. 94). The motions have been referred to the undersigned Magistrate Judge for consideration and disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and S.D. Ala. GenLR 72(A)(2)(S).[1]  Upon consideration of all matters

---

[1] "A motion for sanctions that seeks the award of fees and additional discovery is appropriate for ruling under 28 U.S.C. § 636(b)(1)(A)."  <u>Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC</u>, 621 F. Supp. 3d 757, 760 n.1 (S.D. Tex. 2022); <u>see</u> <u>Matter of In re Skanska USA Civ. Se. Inc.</u>, 340 F.R.D. 180, 191 n.4 (N.D. Fla. 2021) ("A federal magistrate judge has authority to enter an order, as opposed to a report and recommendation, denying a motion for sanctions or granting a motion with relief less drastic than dismissal or default."); <u>San Shiah Enter. Co. v. Pride Shipping Corp.</u>, 783 F. Supp. 1334, 1335 (S.D. Ala. 1992) ("The court is in

presented, and for the reasons set forth below, Defendants' motion for discovery sanctions (Doc. 86) is **GRANTED in part**; Plaintiff's supplemented motion for protective order (Docs. 83, 88) and motion for discovery sanctions (Doc. 87) are **DENIED**; and Defendants' motion to continue deadline for dispositive motions (Doc. 94) is **GRANTED**.

I.    BACKGROUND

In this action, Plaintiff Sandra Caldwell alleges that she suffered discrimination and retaliation based on her race, sex, and protected activity during her employment with Defendant Kimberly-Clark USA, LLC. (See Doc. 14). On July 3, 2025, counsel for Defendants,[2] Roy Nelson Williams ("Williams"), took Plaintiff's videotaped deposition. The deposition did not go well, and Plaintiff's counsel, Roderick Van Daniel ("Van Daniel"), eventually terminated the deposition prematurely after accusing Williams of "badgering" his client.[3]

---

agreement that the magistrate judge correctly held that a sanction hearing is within the magistrate judge's powers under 28 U.S.C. § 636(b)(1)(A)., F.R.Civ.P. 72(a).").

[2] The three remaining Defendants in this action are Kimberly-Clark USA, LLC, Sarah Murphy, and Dennis Helms. (See Docs. 14, 90).

[3] During the deposition, Van Daniel called the undersigned's chambers to complain about opposing counsel's treatment of his client, but the undersigned was not available to address the dispute at that time.

In the days following Plaintiff's deposition, counsel for the parties separately contacted the Court with complaints about the other side's conduct. In an email to chambers, Williams alleged that "[d]uring the deposition, Plaintiff, with the help of her attorney Mr. Van Daniel, repeatedly provided non-responsive answers to several questions," and "[t]his conduct continued throughout the day." According to Williams, "Mr. Van Daniel's behavior was no better." He "often answered questions on his client's behalf," "he launched into repetitive, bad faith, narrative speaking objections to basic questions," and he baselessly "claimed that Defendants' counsel could not ask leading questions." Williams asserted that Van Daniel's conduct "influenced his client's testimony, and her behavior worsened throughout the day." Williams reported that Van Daniel then "unilaterally ended the deposition" before the examination was completed and before the deposition time was exhausted.[4] On behalf of Defendants, Williams requested "(1) that Plaintiff be ordered to reappear for her deposition; (2) that Defendants be granted additional time to complete the deposition, given Plaintiff's non-responsive answers and the conduct of her attorney; (3) that Plaintiff be ordered to reimburse Defendants for the costs and

---

[4] Pursuant to the Rule 16(b) scheduling order in this case, depositions "are limited to a maximum of seven (7) hours, unless extended by agreement of the parties." (Doc. 43 at 3).

expenses associated with this second deposition; and (4) that [the undersigned Magistrate Judge] preside over the deposition, to ensure that the unacceptable conduct from the first deposition is not repeated."

In his own email to chambers, Van Daniel conveyed a strikingly different version of events, alleging that Williams "was being hostile, badgering, and trying to force to answer question in which [Plaintiff] responded with her best knowledge and understanding." Van Daniel claimed that Williams "was making fun and laughing in my client's face. Throwing paperwork at her; not giving it in her hand. He was very disrespectful to Plaintiff's attorney and the Plaintiff." Van Daniel asked the Court "not to allow the Defense's counsel to depose his client again especially with the attitude that he gave her attempting to make the Plaintiff sway her response because of his feelings that she should respond a certain way." Van Daniel posited that Plaintiff "had the right to respond anyway that she desired" to opposing counsel's questions, and that Williams should not have "attempted to make her respond the way that he desired . . . ."

The undersigned scheduled a telephonic discovery conference to address the parties' complaints. At the discovery conference on July 30, 2025, the Court granted the parties leave to file any motions relating to Plaintiff's deposition by no later than August 6, 2025.

On August 6, 2025, Plaintiff filed a motion for a protective order[5] and later filed a motion for discovery sanctions. (Docs. 83, 87). Despite their different titles, Plaintiff's two motions are largely duplicative.[6] As best the Court can discern, it seems that Plaintiff's primary request is that she not be required to sit for a second deposition in this case. (See Doc. 83 at 14; Doc. 87 at 14). To the extent Plaintiff seeks sanctions against Defendants or their counsel relating to the July 3, 2025 deposition, it is not clear what sanctions she is seeking.

In their motion for discovery sanctions dated August 6, 2025, Defendants contend that Van Daniel's behavior during Plaintiff's July 3, 2025 deposition "repeatedly violated the most basic rules governing depositions." (Doc. 86 at 1). As summarized by Defendants, Van Daniel's misconduct during the deposition included: (1) announcing at the outset of the deposition that he would tender speaking objections and then proceeding to do so by "answering questions on behalf of his client, interrupting questioning, and directing testimony during Defendants'

---

[5] Plaintiff also filed a supplement to the motion for protective order. (Doc. 88).

[6] Given the timing of the parties' motions and the fact that Plaintiff's motion for discovery sanctions is largely identical to her earlier motion for protective order, it appears that Plaintiff's motion for discovery sanctions was filed in retaliation for Defendants' earlier motion for discovery sanctions.

examination"; (2) demonstrating "his ignorance of the Federal Rules of Evidence" by "repeatedly objecting that Defendants' counsel was not permitted to ask leading questions of Plaintiff— an adverse witness"; (3) "instruct[ing] Plaintiff not to answer basic questions, lodg[ing] baseless accusations that documents produced by his own client had been 'doctored,' and encourag[ing] his client to provide non-responsive answers"; and (4) rashly deciding "to end the deposition early, long before Defendants completed their examination." (Id.). Defendants assert that Plaintiff followed her counsel's example by "repeatedly evad[ing] answering simple questions and intentionally provid[ing] non-responsive answers to avoid unfavorable testimony and waste deposition time," and by "lodg[ing] random, bad faith speculation about the authenticity of documents *that she produced*." (Id. at 2 (emphasis in original)). Defendants request "[s]ignificant sanctions" against Plaintiff and Van Daniel for their alleged obstructive behavior, including ordering Plaintiff to reimburse Defendants for the costs and attorneys' fees they incurred from the July 3, 2025 deposition and from bringing the instant motion for sanctions; granting Defendants an additional seven hours to conduct Plaintiff's deposition before Plaintiff's requested depositions occur; ordering Plaintiff to reimburse Defendants for the costs and attorneys' fees they incur in conducting Plaintiff's second deposition; appointing a special master, at Plaintiff's

expense, to supervise and rule on any objections during all remaining depositions in this case; prohibiting Plaintiff and her counsel from calling for any break to conduct a private conference while a question is pending, except as necessary to assert a privilege; prohibiting Plaintiff and her counsel from prematurely exiting her second deposition before seven hours of questioning have concluded without express permission from either the Court or the special master; prohibiting Van Daniel from making any speaking objections; prohibiting Van Daniel from making any objections that would not be deemed waived under Federal Rule of Civil Procedure 32(d)(3)(B); and instructing Van Daniel to complete at least six hours of bar-approved Continuing Legal Education ("CLE") on proper deposition procedure and objections in federal court before he attends any future depositions in this case. (Id. at 2-3).

## II.  <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 26(c)(1) "allows for a protective order precluding any type of discovery 'for good cause shown.'" <u>Dunford v. Rolly Marine Serv. Co.</u>, 233 F.R.D. 635, 636 (S.D. Fla. 2005); <u>see</u> Fed. R. Civ. P. 26(c)(1). "The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." <u>Dunford</u>, 233 F.R.D.

at 636.  "A court must balance the competing factors involved in determining whether good cause has been shown." Id. at 636-37.

Under Federal Rule of Civil Procedure 30(d)(2), a court may impose sanctions, including reasonable expenses and attorney's fees, against "a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Sanctions under Rule 30(d)(2) "may be imposed on a deponent *or attorney*." Horton v. Maersk Line, Ltd., 294 F.R.D. 690, 697 n.14 (S.D. Ga. 2013) (emphasis in original) (quoting Whiting v. Hogan, 2013 U.S. Dist. LEXIS 35381, at *28, 2013 WL 1047012, at *9 (D. Ariz. Mar. 14, 2013)).  "The full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule." Id. (quoting Glick v. Molloy, 2013 U.S. Dist. LEXIS 4265, at *6, 2013 WL 140100, at *2 (D. Mont. Jan. 10, 2013)).  "Imposition of sanctions under Rule 30(d)(2) does not require a finding of bad faith, and sanctions can be imposed on an attorney if [his] conduct impedes, delays or frustrates the fair examination of the individual being deposed." Kennedy v. Alabama Dep't of Transportation, 2009 WL 10695349, at *5 (S.D. Ala. Jan. 6, 2009) (internal citations omitted).  A court also has the inherent power to impose sanctions where a party has "acted in bad faith, vexatiosly, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (quotations omitted).

Additionally, Federal Rule of Civil Procedure 37(a)(5) requires the court to order "the party or deponent whose conduct necessitated [a motion for an order compelling disclosure or discovery], the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the movant failed to meet and confer, the response or objection was substantially justified, or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997). "The burden of establishing substantial justification is on the party being sanctioned." Masforce Eur., BVBA v. Mastry Marine & Indus. Design, Inc., 2013 U.S. Dist. LEXIS 199046, at *10, 2013 WL 12157874, at *3 (M.D. Fla. June 6, 2013) (quotation omitted).

## III. **DISCUSSION**

Along with their motion and their response to Plaintiff's motions, Defendants submitted compilations of video clips from Plaintiff's deposition to "demonstrate the full extent of Plaintiff and her counsel's misconduct." (See Docs. 85, 86, 91, 93). The Court has reviewed these compilations in their entirety and finds that they overwhelmingly confirm Defendants' characterization of the events, while contradicting Plaintiff's

allegations.  Indeed, it appears to the Court that Van Daniel's disruptive behavior, combined with Plaintiff's repeated delays and refusals to provide responsive answers to basic questions, significantly hindered Defendants' ability to elicit meaningful testimony during Plaintiff's deposition.

**A. Defendants' Motion for Discovery Sanctions (Doc. 86)**

As set forth in detail below, Defendants' motion for discovery sanctions (Doc. 86) is **GRANTED in part.**

Federal Rule of Civil Procedure 30 provides guidance for the conduct of a deposition.  Rule 30 provides that examination and cross-examination of a deponent during a deposition should proceed as it would during a trial.  <u>See</u> Fed. R. Civ. P. 30(c)(1). Objections raised during a deposition must comply with Rule 30(c)(2), which provides as follows:

> An objection at the time of the examination-whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition-must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).

An objection "to the competence, relevance, or materiality of testimony . . . is not waived by a failure to make the objection before or during the deposition, unless the ground for it might

have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(A). Thus, "an objection that a question seeks irrelevant evidence usually need not be made at all." Mitnor Corp. v. Club Condominiums, 339 F.R.D. 312, 317 n.1 (N.D. Fla. 2021). In contrast, objections to "the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time" are waived if "not timely made during the deposition." Fed. R. Civ. P. 32(d)(3)(B). Rule 32 therefore distinguishes between "objections to the manner of taking the deposition" and "objections . . . to the substance of the testimony (such as relevancy or competency)." Cabello v. Fernandez-Larios, 402 F.3d 1148, 1160 (11th Cir. 2005) (per curiam).

Rule 30 "clarifies that testimony taken during a deposition is to be completely that of the deponent, not a version of the testimony which has been edited or glossed by the deponent's lawyer." Christie v. Royal Caribbean Cruises, Ltd., 2021 U.S. Dist. LEXIS 129957, at *10, 2021 WL 2940251, at *3 (S.D. Fla. July 13, 2021) (citing Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. Pa. 1993)). "That is, a witness must be allowed to provide an answer to the best of his or her ability, free from any influence by the attorney." Id. "If a witness is confused about a question, or if a question seems awkward or vague to the witness, the witness may ask the deposing counsel to clarify the question." Id.

Instructions for a deponent not to answer a question are impermissible except "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).[7] "Unless one of the exceptions enumerated in Rule 30(c)(2) is applicable, an attorney typically should lodge a succinct objection to preserve the issue, allow the deponent to answer the question, and then, if necessary, raise the issue with the court in a pretrial or trial motion." Mitnor Corp., 339 F.R.D. at 320.

> The Federal Rules of Civil Procedure do not permit attorneys representing deponents to (1) coach the client by raising rhetoric-filled objections designed to feed the deponent information or advice; (2) answer the substantive questions themselves, before the deponent has provided an under-oath substantive response; and (3) instruct the deponent to not answer questions in the absence of a legitimate privilege objection or a Court-ordered limitation on the subject matter.

United States v. Tardon, 493 F. Supp. 3d 1188, 1247 (S.D. Fla. 2020). As set forth below, Van Daniel violated these tenets repeatedly during his client's deposition.

First, Van Daniel instructed Plaintiff not to answer questions based on bogus attorney-client privilege or work product objections. For example, when Plaintiff was asked what emails she

---

[7] "When an attorney instructs a deponent not to answer a question based on one of the reasons enumerated in Rule 30(c)(2), he must *immediately* seek a protective order from the relevant court, unless one was obtained prior to the deposition or the examining counsel *on the record* agrees to withdraw the objectionable question." Mitnor Corp., 339 F.R.D. at 319 (emphasis in original).

had reviewed in preparation for her deposition, Van Daniel asserted work product privilege and stated that Plaintiff didn't need to answer the question.  Williams reminded Van Daniel that he had already instructed Plaintiff not to divulge any communications with her counsel, but Van Daniel continued to instruct Plaintiff not to answer.  Williams then rephrased the question by asking Plaintiff if there were emails Plaintiff had reviewed in preparation for her deposition that were "not correspondence between you and your attorney."  Van Daniel interjected again, claiming incorrectly that the question had been "asked and answered" and reiterating a work product objection.  After Williams asked Van Daniel to articulate the basis for his work product objection to the rephrased question, Van Daniel challenged Williams to explain the question's "relevancy"[8] and then proceeded

---

[8] This was not the only example of Van Daniel interrupting questioning and attempting to require Williams to explain the purpose or relevance of his questions before allowing Plaintiff to answer.  "To the extent that [a party] believes that a question is objectionable – for example, because it seeks irrelevant or inadmissible testimony – she should concisely note the objection in a nonargumentative manner – such as, 'objection, relevance' – and answer the question.  See Fed. R. Civ. P. 30(c)(2) ('[a]n objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection").  Defendants are not required to explain the relevancy of the question or explain how plaintiff's answer may be used in the case." Murphy v. Maggs, 2024 U.S. Dist. LEXIS 36335, at *15, 2024 WL 884992, at *5 (W.D.N.Y. Mar. 1, 2024).

to partially answer the question himself.[9]  Van Daniel then continued to interrupt Williams, stating: "This not my first time doing a deposition.  I'll do it for the way I do it and you do it the way that you do it."

Second, Van Daniel highlighted his misunderstanding of the federal rules by repeatedly objecting to "leading" questions. Williams pointed out that he was allowed to pose leading questions to an adverse party, but Van Daniel responded that Plaintiff hadn't been proven to be a "hostile witness" and purported to educate Williams that "for here in the State of Alabama in federal court, she has to be a hostile witness before you can cross-examine."

"Leading questions are those that suggest an answer for the witness." United States v. Haden, 116 F.3d 1483 (7th Cir. 1997) (citing Black's Law Dictionary (4th ed. 1968)); see also United States v. Weeks, 2016 U.S. Dist. LEXIS 36215, at *2, 2016 WL 8715933, at *1 (S.D. Fla. Mar. 18, 2016) ("[A] question which suggests only the answer yes is leading; a question which suggests

---

[9] As already noted, "[t]estimony taken during a deposition is to be completely that of the deponent, not a version of the testimony which has been edited or glossed by the deponent's lawyer." Mitnor Corp., 339 F.R.D. at 317 (quotation omitted).  "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness.  There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers." Lugo v. Chip Simmons, 2024 U.S. Dist. LEXIS 242355, at *9, 2024 WL 5508346, at *4 (N.D. Fla. July 31, 2024) (quoting Hall, 150 F.R.D. at 528).

14

only the answer no is leading; but a question which may be answered **either** yes or no, and suggests neither answer as the correct one, is not leading.") (emphasis in original) (quotation omitted).  As noted, Rule 30(c)(1) provides that for depositions by oral examination, the "examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Fed. R. Civ. P. 30(c)(1).  The Federal Rules of Evidence generally permit leading questions to be asked of an adverse party. See Fed. R. Evid. 611(c)(2).  Accordingly, in deposing Plaintiff, an adverse party, Williams was permitted to ask leading questions, and there was no valid basis for Van Daniel's objections.  See Smith v. Logansport Cmty. Sch. Corp., 139 F.R.D. 637, 642 n.1 (N.D. Ind. 1991) (noting that under Rule 611(c), the direct examiner at a deposition "could still ask leading questions if the deponent is a hostile witness, *an adverse party*, or a witness identified with an adverse party") (emphasis added); Gugino v. City of Buffalo, 2024 U.S. Dist. LEXIS 96381, at *20-21, 2024 WL 2785505, at *6 (W.D.N.Y. May 30, 2024) ("[I]n deposing Gramaglia who, as a defendant to this action, is an adverse party, Plaintiff is permitted to ask leading questions thereby requiring a yes or no response."); United States v. White, 2024 U.S. Dist. LEXIS 87187, at *15-16, 2024 WL 2164683, at *6 (E.D.N.C. May 14, 2024) (where counsel repeatedly objected to leading questions during direct examination of a witness identified with an adverse party, noting

that there is "nothing inappropriate" about asking leading questions to a hostile witness, an adverse party, or a witness identified with an adverse party and thus no basis for an objection to the leading nature of counsel's questions to the witness, and warning that "[a]ny attorney who makes baseless objections may be subject to sanctions").[10]

Third, Van Daniel repeatedly interrupted or derailed Williams's questioning by making lengthy speaking objections. Indeed, even after Williams reminded him that speaking objections were not appropriate for depositions, Van Daniel insisted: "I can make speaking objections. . . . I'm doing talking and speaking objections, because I can do it during a deposition because I've done it before. Plenty of times."

"Objections that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)." Mitnor Corp., 339 F.R.D. at 317 (quotation omitted).

> Speaking objections oftentimes communicate to a deponent his counsel's desired answer to a question. Other times speaking objections are designed to prod the deponent to raise the same objection voiced by counsel.

---

[10] It is also not clear that all of the questions Van Daniel objected to as leading were in fact leading questions. For example, after Williams asked Plaintiff – seemingly in a neutral manner – whether a "workplace safety training incident with Sarah Murphy" was something she had discussed with her daughter, Van Daniel stated: "Objection. Leading. And the counsel is testifying." See Weeks, 2016 U.S. Dist. LEXIS 36215, at *4, 2016 WL 8715933, at *2 (finding that questions "phrased in a neutral way, calling for *either* a yes or no answer and not suggesting one or the other" were "not leading questions") (emphasis in original).

> In other instances, speaking objections are used to alert the deponent that the examiner is eliciting information harmful to the party represented by the objecting counsel. In such instances, the speaking objection is designed to catalyze reticence on the part of the deponent. In yet other situations, speaking objections are designed to antagonize the examiner and interrupt the flow of the deposition.

Id. at 317-18 (internal citations omitted). "Regardless of their motivation and purpose in a particular context, speaking objections are impermissible because they inhibit the truth-seeking function of depositions." Id. at 318. "Speaking objections and coaching objections are simply not permitted in depositions in federal cases." Id. (quotation omitted). Instead, objections "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Regardless of their purpose, it is clear to the Court that Van Daniel's repeated use of speaking objections significantly inhibited the truth-seeking function of Plaintiff's deposition by interrupting the flow of questioning, antagonizing examining counsel, influencing Plaintiff's answers, and steadily increasing Plaintiff's reluctance to answer even the most basic questions.

Fourth, Van Daniel improperly interrupted the deposition by commanding Williams to direct Plaintiff to documents or portions of documents instead of allowing Plaintiff to answer basic questions on her own or to seek clarification if necessary. For example, when Williams asked Plaintiff whether she was aware that

she had initially asserted a hostile work environment claim in this action, Van Daniel immediately interjected and insisted that Williams refresh Plaintiff's memory by directing her to a specific page number in her complaint, even though there was no indication that Plaintiff's memory needed to be refreshed. Making matters worse, Van Daniel then went on to assert baseless attorney-client privilege and work product objections to the question, to answer the question on behalf of his client, and to interrupt Williams's questioning again in order to suggestively ask Plaintiff whether she needed to refresh her memory. As noted, "a witness must be allowed to provide an answer to the best of his or her ability, free from any influence by the attorney. If a witness is confused about a question, or if a question seems awkward or vague to the witness, the witness may ask the deposing counsel to clarify the question." Christie, 2021 U.S. Dist. LEXIS 129957, at *10, 2021 WL 2940251, at *3; see also Phillips v. Manufacturers Hanover Tr. Co., 1994 U.S. Dist. LEXIS 3748, at *12-13, 1994 WL 116078, at *4 (S.D.N.Y. Mar. 29, 1994) ("[I]t is not counsel's place to interrupt if a question is perceived to be potentially unclear to the witness. Rather, the witness should make the determination as to whether a question is clear and answer to the best of his or her ability.").

Fifth, Van Daniel improperly interrupted the deposition by insisting on privately conferring with his client while questions

were pending.  For example, when Williams asked Plaintiff about the outcome of a prior arbitration, Van Daniel immediately stepped in and stated: "We need to take a break because she need to talk to me.  We need to consult."  Williams pointed out that Plaintiff had agreed prior to the deposition that she would answer any pending question before taking a break, and that she had done so in front of Van Daniel, who did not object.  However, Van Daniel challenged Williams to point him "to the specific rule where the Federal Rules of Civil Procedure said that she had to answer that question" and continued to instruct Plaintiff not to answer. Plaintiff then proceeded to take a break and confer with Van Daniel prior to returning and answering the question.

"Under Rule 30(c), depositions generally are to be conducted under the same testimonial rules as are trials."  Hall, 150 F.R.D. at 528.  "During a civil trial, a witness and his or her lawyer are not permitted to confer at their pleasure during the witness's testimony."  Id.  "The same is true at a deposition.  The fact that there is no judge in the room to prevent private conferences does not mean that such conferences should or may occur" while a question is pending.  Id.  An attorney questioning a witness "is entitled to have the witness, and the witness alone, answer questions."  In re Stratosphere Corp. Sec. Litig., 182 F.R.D. 614, 621 (D. Nev. 1998).  Thus, "there is unanimity on the impropriety of the witness' attorney's conferring with the witness while a

question is pending . . . ." <u>Cullen v. Nissan N. Am., Inc.</u>, 2010 U.S. Dist. LEXIS 152545, at *18, 2010 WL 11579750, at *7 (M.D. Tenn. Feb. 2, 2010); <u>see, e.g.</u>, <u>Stratosphere</u>, 182 F.R.D. at 621 ("When there is a question pending neither the deponent nor his or her counsel may initiate the interruption of the proceeding to confer about the question, the answer, or about any document that is being examined, except to assert a claim of privilege (conform to a court order or seek a protective order)."); <u>Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.</u>, 657 F.2d 890, 901-02 (7th Cir. 1981) (where there were multiple private, off-the-record conferences between plaintiffs and their counsel between the question and answer or the refusal to answer, stating that "[i]t is too late once the ball has been snapped for the coach to send in a different play").

Sixth, Plaintiff (aided by Van Daniel) wasted time and obstructed fair questioning by repeatedly giving non-responsive answers to basic, foundational questions. For example, Defendants' Exhibit 5 included an email from Plaintiff to Eric Postle that stated, in part: "The union is involved in the pay issue Eric and I'm just waiting on you to say when." (<u>See</u> Doc. 86-2 at 36). When Williams asked Plaintiff "who is the 'you' that you're referring to" in that sentence (i.e., whether she was referring to Eric Postle, the union, or some other person or entity), Plaintiff paused and then stated: "This email is from

20

myself to Eric Postle."   When Williams again asked who "you" referred to, Plaintiff smiled and stated: "I just answered it." After Williams correctly pointed out that Plaintiff had not in fact answered the question, Van Daniel objected and wrongly claimed that the question had been "asked and answered."[11]

Seventh, Plaintiff (again aided by Van Daniel) improperly obstructed fair questioning by challenging – with no apparent basis – the authenticity of exhibits to avoid testifying about their contents.  For example, when shown a grievance report that *she* had produced to Defendants in discovery (see id. at 38), Plaintiff speculated that it "could have been redesigned and rewrote" and refused to answer questions about the document.  Yet, despite implying that the document had been fabricated or altered, Plaintiff then refused to actually state whether she believed the document had been doctored in some way and instead belligerently challenged Williams to show her the original.   Van Daniel encouraged Plaintiff's refusal to answer questions about the grievance report by lodging objections about the document's authenticity and by testifying on his client's behalf.  See L. Firm of Omar T. Mohammedi, LLC v. Computer Assisted Prac. Elec.

---

[11] This was a recurrent pattern.  Repeatedly, Plaintiff provided non-responsive answers to questions, Williams attempted to get Plaintiff to answer the question that was asked, and Van Daniel groundlessly objected that the question had been "asked and answered" or otherwise encouraged Plaintiff's failure to meaningfully respond to the question asked.

Mgmt. Sols., 2018 U.S. Dist. LEXIS 177818, at *6, 2018 WL 5016605, at *2 (S.D.N.Y. Oct. 16, 2018) (explaining that because an objection based on a lack of authentication is really a type of relevancy objection, counsel's instruction not to answer certain questions pertaining to a hard drive on the grounds that the hard drive not not been properly authenticated were improper, and counsel "should have simply stated his objection and permitted [the deponent] to answer the questions").

Seventh, Van Daniel (with Plaintiff's approval) unilaterally and prematurely terminated the deposition. After Plaintiff repeatedly refused to answer the simple question of who wrote the date "1/27/23" on the job application in Defendants' Exhibit 12, Van Daniel accused Williams of "badgering my witness" and stated: "I think I'm done for the day. Right? So we done for the day, because you badgering my client, and that's it. That's it. You can email the judge or do what you want to do. We done." When Williams asked Plaintiff whether she was following her counsel's advice in prematurely exiting the deposition, Plaintiff stated: "I will have my attorney to answer all questions relating to what you have to say at this time." Despite Van Daniel's baseless accusations of "badgering," it is abundantly clear to the Court that Plaintiff's premature exit from the deposition at Van Daniel's urging lacked any valid justification and further deprived

Defendants of an opportunity to conduct a meaningful deposition of arguably the most important witness in this case.

"Although not every improper objection warrants sanctions, sanctions are appropriate where the attorney's conduct essentially destroys a deposition." Colon v. New York City Hous. Auth., 2019 U.S. Dist. LEXIS 155205, at *11, 2019 WL 4291667, at *4 (S.D.N.Y. Sept. 11, 2019) (quotation omitted).  Such is unquestionably the case here.  As described above, Van Daniel displayed a stunning lack of familiarity with the rules and guidelines governing proper deposition conduct, while Plaintiff repeatedly wasted time and stubbornly refused to answer basic questions.  Troublingly, it is evident to the Court that Van Daniel's improper behavior influenced Plaintiff, who appeared to grow more resistant to providing responsive answers to questions as the deposition went along. There is no question that Van Daniel and Plaintiff significantly impeded, delayed, and frustrated Defendants' ability to conduct a fair and meaningful examination through their dilatory and obstructive conduct.  Accordingly, the Court finds that they should be sanctioned for violating Rule 30.[12]

---

[12] Although Defendants also cite Rule 37(a)(5)(A), the Court relies on Rule 30(d)(2) to resolve this dispute.  See Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC, 2022 U.S. Dist. LEXIS 32766, at *4 & n.1, 2022 WL 741628, at *2 & n.1 (M.D. Fla. Feb. 24, 2022) (imposing sanctions under Rule 30(d)(2) for improperly instructing deponents not to answer questions even though movant did not explicitly label its motion as a Rule 30 sanctions motion, and

With regard to the relief requested by Defendants, the Court finds that Defendants are entitled to conduct another videotaped deposition of Plaintiff before any depositions noticed by Plaintiff may occur. The second deposition of Plaintiff shall be limited to no more than five (5) hours.

The Court will not require Plaintiff or Van Daniel to reimburse Defendants for the costs and attorneys' fees they incurred from the July 3, 2025 deposition. However, because the need for an additional deposition of Plaintiff is primarily the result of Van Daniel's conduct during the first deposition, the Court will require Van Daniel to reimburse Defendants for the reasonable expenses (including attorneys' fees) they incur in taking the second videotaped deposition of Plaintiff, as well as the reasonable expenses (including attorneys' fees) they incurred in bringing the instant motion for discovery sanctions. Counsel for the parties are **strongly encouraged** to resolve the amount owed

---

noting that Rule 37 could not be a basis for sanctions because (as in this case) the movant had filed no motion to compel, there was no violation of a previously issued order, and no one had failed to appear at a scheduled deposition); see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 250 F. Supp. 3d 244, 267-69 & n.4 (W.D. Ky. 2017) (rejecting argument that motion seeking to preclude testimony based on deponent's refusal to answer questions at the advice of counsel was "a disguised motion to compel under Federal Rule of Civil Procedure 37(a)(1) that is procedurally improper because [movant] failed meet and confer with [non-movant] before filing it," and stating that "the Court relies on Fed. R. Civ. P. 30(d)(2) to resolve this dispute, and that rule contains no meet-and-confer requirement") (citing 7 James Wm. Moore et al., *Moore's Federal Practice* § 30.43[5] (3d ed. 1997)).

to Defendants without further involvement of this Court. However, should they be unable to agree on the amount owed, Defendants' counsel shall file with the Court within **ten (10) days** after Plaintiff's second deposition an affidavit of reasonable expenses incurred in pursuing the instant motion (with appropriate supporting documentation), as well as all reasonable expenses incurred in re-deposing Plaintiff.[13]   Counsel for Plaintiff may file a response to that submission within **ten (10) days** after its filing if he desires to be heard.  See Smith v. Psychiatric Sols., Inc., 358 F. App'x 76, 79 (11th Cir. 2009) (per curiam) (concluding that "by putting [sanctioned attorney] on notice of the sanctions and giving him the opportunity to object, due process was satisfied").

The Court denies Defendants' request for the appointment of a special master to oversee the remaining depositions in this case. The Court expects that Van Daniel and Plaintiff will make every effort at all future depositions to comply with the applicable rules governing depositions and to refrain from the repeated

---

[13] A "notice that sanctions will be imposed is not a license for defendant[s'] counsel to 'run up the bill.'  An award of reasonable expenses necessarily limits defendant[s] to recovery of reasonable attorney's fees."  Wellsco Int'l Co. Ltd. v. HD Supply Distrib. Servs., LLC, 2010 U.S. Dist. LEXIS 152465, at *12, 2010 WL 11508337, at *5 (N.D. Ga. July 26, 2010).

obstructive and dilatory conduct that necessitated this order.[14] The undersigned directs that the second deposition of Plaintiff shall be videotaped. This will allow the parties to readily bring any further improprieties to the Court's attention and to seek appropriate relief for such misconduct. In addition, counsel for the parties shall give the Court seven (7) days' advance notice of Plaintiff's deposition so that the undersigned can make every effort to be available by telephone in the event there are any reoccurring problems. See Bolander v. Taser Int'l, Inc., 2009 U.S. Dist. LEXIS 155287, at *11-12, 2009 WL 10868399, at *4 (S.D. Fla. Feb. 4, 2009) (denying request for special master but noting that the parties could contact the court by telephone during continued deposition if they needed assistance in implementing sanctions order).

To the extent Defendants ask the Court to *require* Van Daniel to complete at least six CLE hours on proper deposition procedure

---

[14] See Bolander v. Taser Int'l, Inc., 2009 U.S. Dist. LEXIS 155287, at *10-11, 2009 WL 10868399, at *4 (S.D. Fla. Feb. 4, 2009) (ordering attorney whose conduct necessitated a second deposition to "conduct himself in accordance with Rule 30" at the second deposition by: lodging objections "in a concise, nonargumentative, nonsuggestive manner"; refraining "from lodging speaking or lengthy objections, and stating his personal opinion as to matters raised in deposition"; limiting objections "to those that under Rule 32(d) might be waived if not made at the time the need for the objection arises"; refraining from "interrupting the examination of the witness, or otherwise impeding, delaying, or frustrating the fair examination of the witness"; and conducting himself "as if he were at trial").

and objections in federal court prior to Plaintiff's second deposition, the request is denied. However, the Court directs Van Daniel to thoroughly familiarize himself with the rules and procedures for depositions and with this Court's "Introduction to Civil Discovery Practice"[15] prior to participating in any further depositions in this case or other cases.

### B. Plaintiff's Motion for Protective Order (Docs. 83, 88) and Motion for Discovery Sanctions (Doc. 87).

Plaintiff's supplemented motion for a protective order and motion for discovery sanctions (Docs. 83, 87, 88) are **DENIED** as meritless. Given Van Daniel's improper and dilatory conduct, the undersigned finds it preposterous that he would attempt to impugn Williams's professional conduct and seek sanctions against Defendants. Further, given the utter baselessness of Plaintiff's deposition-related motions, the Court does not find it necessary to address each of the vague, petty, and unsubstantiated allegations lodged therein. Instead, the Court will merely note that it appears Williams handled a difficult situation – created entirely by Van Daniel and his client – with patience and professionalism.

However, to avoid similar difficulties at Plaintiff's second deposition, the Court finds it necessary to point out to Van Daniel that his objections appear to be largely based on two critical and

---

[15]https://www.alsd.uscourts.gov/sites/alsd/files/Discovery_Practice.pdf

related misunderstandings.  First, although Van Daniel seems to believe otherwise, Plaintiff does not have "the right to respond anyway that she desire[s]" to deposition questions.  Rather, Plaintiff's answers must to be *responsive to the questions asked*. See, e.g., Meyer v. Wexford Health Sources, 2017 U.S. Dist. LEXIS 171027, at *5, 2017 WL 4676643, at *2 (S.D. Ill. Sept. 14, 2017) (finding that plaintiff "failed to comply with Rule 30(c) in that he provided non-responsive answers to deposition questions"), report and recommendation adopted, 2017 U.S. Dist. LEXIS 170807, 2017 WL 4619380 (S.D. Ill. Oct. 16, 2017); GMAC Bank v. HTFC Corp., 248 F.R.D. 182, 193-94 (E.D. Pa. 2008) (imposing sanctions under Rule 30(d)(2) on deponent who frequently gave "evasive and non-responsive" answers).  Too many times at Plaintiff's first deposition, Plaintiff repeatedly answered questions in an evasive and non-responsive manner, and did so with Van Daniel's full support and encouragement.  Second, Williams was not being argumentative, nor was he harassing, ridiculing, or embarrassing Plaintiff, when he attempted to prompt her to provide responsive answers in the face of repeated evasions and non-sequiturs.  The Court cautions both Van Daniel and Plaintiff that if Plaintiff persists in providing evasive and non-responsive answers at her second deposition, additional sanctions may be imposed.

**C. Defendants' Motion to Continue Deadline for Dispositive Motions (Doc. 94).**

As a final matter, the Court addresses Defendants' motion to continue the deadline for dispositive motions. (Doc. 94). The discovery deadline in this case is currently August 29, 2025, and the current deadline for dispositive motions and challenges to expert witnesses is September 29, 2025. (See Doc. 71). The Court notes that Plaintiff has also noticed several depositions, which will have to be taken after her own deposition is completed. (See Doc. 80). Defendants' motion requests that the dispositive motion deadline "be continued to a date no earlier than thirty days after Defendants complete the deposition of Plaintiff" in order to provide them with sufficient time to prepare any dispositive motions after taking Plaintiff's deposition. (Doc. 94 at 1-2).

Under the circumstances, there is no question that the parties will not be able to complete the necessary depositions in this case prior to the current discovery deadline, and that the current schedule will not allow the parties sufficient time to draft any dispositive motions. Accordingly, an adjustment of the scheduling order deadlines is necessary. For good cause shown, Defendants' motion to continue the deadline for dispositive motions (Doc. 94) is **GRANTED**. The discovery deadline is extended to **September 30, 2025,** and the deadline for dispositive motions and challenges to expert witnesses is extended to **October 31, 2025.** This case is

set for a telephonic status conference before the undersigned Magistrate Judge on **October 2, 2025,** at **2:00 p.m. (CDT).**

      **DONE** this **2nd** day of **September, 2025.**

                                 **/s/ SONJA F. BIVINS**
                            **UNITED STATES MAGISTRATE JUDGE**