IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA CALDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0161-WS-B |
| | ) |
| KIMBERLY-CLARK USA, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion to reinstate. (Doc. 113). The defendants filed a brief in opposition, which includes an embedded motion to enforce settlement, (Doc. 116), the plaintiff filed a reply in support of its motion and response to the defendants' motion, (Doc. 117),[1] and the defendants have filed a reply in support of their motion. (Doc. 120). Both motions are now ripe for resolution.[2]

On September 16, 2025,[3] the plaintiff filed a notice of settlement. (Doc. 109). On September 17, the Court entered its standard order on notice of settlement, dismissing the

---

[1] The plaintiff's motion for leave to file evidentiary submission, (Doc. 118), is **granted**.

[2] The defendants have filed motions for leave to file their briefs and exhibits under seal. (Docs. 115, 119). They assert that sealing is consistent with the confidentiality provision of the written settlement agreement and that the good cause necessary to outweigh the common-law right of access to motions and exhibits is supplied by the chilling effect that public disclosure in this case would have on the defendants' settlement efforts with respect to potential future adversaries.

As the defendants' authority states, "a company's interest in keeping terms of confidential agreements private *often* outweighs the interest in public access." *Leslie v. Wells Fargo Bank, N.A.*, 2023 WL 7169098 at *1 (N.D. Ga. 2023) (emphasis added, internal quotes omitted). Often is not always. As discussed in text, the settlement in this case provides the plaintiff no compensation whatsoever, and the defendants fail to explain how such a commanding victory could possibly weaken its negotiating position in any future case. The motion for leave to file under seal is thus **denied**. The Clerk is directed to unseal the defendants' filings.

[3] All dates herein are 2025.

action with prejudice from the active docket but providing that "any party may reinstate the action within thirty days from the date of entry of this order if the settlement agreement documentation is not consummated." (Doc. 110). The plaintiff later filed an unopposed motion to extend the reinstatement deadline from October 17 to November 7, (Doc. 111), which relief the Court granted. (Doc. 112). Because the plaintiff's motion to reinstate was timely filed on November 6, and because the parties agree that the settlement agreement documentation has not been executed by all parties, (Doc. 116 at 6; Doc. 116-10 at 2), the motion to reinstate is **granted**.

As this Court has noted, "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Bush v. Federal Home Loan Mortgage Corp.*, 2021 WL 3056382 at *2 (S.D. Ala. 2021) (internal quotes omitted); *accord Kent v. Baker*, 815 F.2d 1395, 1399-1400 (11th Cir. 1987). The parties do not disagree.

"The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). Both sides urge the Court to apply Alabama contract law. (Doc. 116 at 6-7; Doc. 117 at 2-4).

"A settlement agreement is a contract and subject to ordinary rules regarding the formation and enforcement of contracts." *Bush*, 2021 WL 3056382 at *2. As to formation, "[a] contract exists when there is an offer, acceptance, consideration, and mutual assent to the essential terms of the agreement." *Sirote & Permutt, P.C. v. Caldwell*, 350 So. 3d 681, 686 (Ala. 2021).

Here, the defendants made a written offer to settle on the following terms: the defendants would waive the discovery sanctions awarded them, and would not require the plaintiff to resign, in exchange for the plaintiff completely walking away from the lawsuit, dismissing the lawsuit with prejudice, and globally releasing all claims. (Doc. 116-1 at 2). The defendants confirm that this is the entirety of their offer. (Doc. 116 at 1, 2, 3, 6; Doc. 116-10 at 11).

The defendants expressly held this offer open until September 18. (Doc.116-1 at 2). On September 16, counsel for the plaintiff reported in writing that the plaintiff "has agreed to your settlement," and he then repeated the terms set forth in the defendants' offer. (Doc. 116-2 at 1). The plaintiff notes that, if an offeree responds to an offer "with additional or changed terms," there is no acceptance of the original offer but instead a counter-offer. (Doc. 117 at 3). The plaintiff, however, responded to the defendants' offer by explicitly "agree[ing] to your settlement." (Doc. 116-2 at 1). She did not propose any additional or changed terms; on the contrary, she repeated back to the defendants the same terms they had proposed. (*Id*.). The plaintiff therefore accepted the defendants' offer.

The plaintiff posits that "[t]he agreement lacks consideration for both parties." (Doc. 117 at 1). She provides no authority, no reasoning, no argument, no verbiage of any kind beyond her seven-word *ipse dixit*. Even if this opaque statement were to be generously construed as directed towards the September agreement and not, as discussed below, the October settlement agreement documentation, the plaintiff has already been advised that "a passing reference to an issue in a brief is insufficient to properly raise that issue." *Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367, 1377 (S.D. Ala. 2024).

The real conflict in this case does not come from the straightforward agreement reached in September but from the subsequent documentation of the agreement in October. On October 13, the defendants propounded a draft "confidential settlement agreement and full and final release of claims." (Doc. 116-3 at 2-8). On October 17, the plaintiff through counsel objected that the draft document omitted the agreed term that the plaintiff would not be resigning as a condition of the settlement. (Doc. 116-10 at 8). At the same time, the plaintiff objected to two terms in the confidentiality provision of the draft document: the inclusion of a canned response to media inquiries, and a penalty of $25,000 (plus costs and attorney's fees) for any breach of the confidentiality provision.

3

(*Id*.). The plaintiff also objected to a provision specifying that the amount of fees and costs covered by the sanctions award equals $37,846.54. (*Id*. at 3).[4]

The parties' September 16 agreement expressly included a provision that the plaintiff not be required to resign as a condition of settlement. That provision therefore must be included in the settlement agreement documentation.

The plaintiff has not agreed to the penalty clause, the joint media statement, or the dollar amount of sanctions awarded,[5] and the defendants are not free to unilaterally impose these provisions on the plaintiff. The plaintiff offered to accept these terms in exchange for a monetary consideration, but the defendants refused. (Doc. 116-10 at 8).[6] The terms must therefore be stripped from the settlement document.

---

[4] The plaintiff has suggested disagreement with additional aspects of the draft document, but she failed on numerous occasions -- despite insistent prodding from defense counsel -- to identify any issue beyond those noted above. (Doc. 116-10 at 2-10). Before the Court, the plaintiff has similarly objected to "other terms and conditions never agreed upon," without identifying any objectionable provision not referenced above. (Doc. 117 at 2). The scope of the parties' disagreement is therefore confined to the matters addressed in text.

[5] The defendants suggest the plaintiff agreed to the sanctions figure simply because that figure was mentioned in the same letter that conveyed the defendants' settlement proposal. (Doc. 116 at 3). In a word, no. The settlement proposal was expressed in the second paragraph of the letter, while the amount of sanctions was raised only in the fourth paragraph, where it was expressed as a demand for payment, not as a figure to be accepted as part of any settlement. (Doc. 116-1 at 2).

[6] Ironically, the defendants characterize the plaintiff's proposal as an attempt "to squeeze additional money from them." (Doc. 116 at 1). It is in fact the defendants doing the squeezing, with the plaintiff seeking only to receive consideration for the squeeze. There is nothing inherently suspect about a liquidated damages clause for violation of a confidentiality provision, but the $25,000 proposed by the defendants is orders of magnitude greater than others of which the Court is aware. *See, e.g., McClain v. Warren*, 2025 WL 1449952 at *17 (N.D. Ala. 2025) (establishing liquidated damages of $500 per breach).

The defendants' attempt to force the plaintiff to agree that their awarded attorney's fees and expenses top $37,000 is similarly egregious. Attorney's fees awarded as a sanction are determined using the traditional lodestar approach. *E.g., Jones v. Whirlpool Corp*., 2025 WL 242202 at *5 (S.D. Ala. 2025). The reasonable hourly rate is that for lawyers of similar qualifications and experience performing similar work in the local market; the higher rates charged by non-local attorneys cannot be passed on to an opponent without showing a lack of

For the reasons set forth above, the motion to enforce settlement agreement is **granted in part**. The defendants are **ordered** to revise the settlement agreement documentation in accordance with this order. The parties are **ordered** to execute the settlement agreement documentation as so revised. To the extent the defendants seek additional or different relief, their motion is **denied**. The parties are **ordered** to file, on or before **December 15, 2025**, confirmation that the revised settlement agreement documentation has been executed by all parties.

DONE and ORDERED this 1st day of December, 2025.

<u>s/ WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE

---

local attorneys able and willing to handle such cases. *E.g., BMO Bank N.A. v. Byrant*, 2025 WL 1136135 at *3 (S.D. Ala. 2025). Many excellent local lawyers defend employment discrimination suits such as this one, so only local rates can be awarded. Every hourly rate proposed by the defendants is $200 to $400 *greater* than the *maximum* hourly rates approved in this District for similarly experienced attorneys. *See id*. at *5. Without even considering the reasonableness of the hours expended or of the expenses incurred, it is obvious that the defendants' proposed figure is at least $15,000 to $20,000 higher than they could possibly support under the governing legal standard.